

1919 Pennsylvania Avenue NW
Suite 800
Washington, DC 20006

**Robert Corn-Revere**

Tel. 202.973.4225
Fax 202.973.4499
bobcornrevere@dwt.com

February 19, 2019

<u>Via ECF</u>

The Honorable Lorna G. Schofield
United States District Judge
40 Foley Square
New York, NY 100007

Re:   *PEN American Center, Inc. v. Trump*, 18 Civ. 9433 (LGS)

Dear Judge Schofield:

    Plaintiff PEN American Center, Inc. ("Plaintiff") responds to the Defendant's request to file a motion to dismiss the amended complaint in this action. Plaintiff is a nonprofit organization of writers, journalists, and literary professionals whose mission is celebrating and defending free expression in the United States and around the world. Plaintiff plausibly alleges multiple acts of retaliation against journalists and media companies―including its own members―by the President of the United States to punish them for their speech. For the reasons summarized below, Defendant's proposed motion lacks merit.

**I.   Plaintiff Has Standing to Sue.**

    **a.   Organizational Standing**

    Plaintiff satisfies all three elements of organizational standing―(1) there is an imminent "injury in fact" to itself as an organization that is "distinct and palpable" because its activities have been perceptibly impaired; (2) this injury is "fairly traceable" to the defendant's actions; and (3) a favorable decision would redress this injury. *Centro de la Comunidad Hispana de Locust Valley v. Town of Oyster Bay*, 868 F.3d 104, 109 (2d Cir. 2017).

    The Second Circuit has made clear that "even the slight diversion of resources to remedy some harm or to fight some harmful conduct or policy can constitute an injury-in-fact sufficient to confer [organizational] standing if the injury is perceptible, concrete, and demonstrable." *Id.* at 121. Plaintiff's Amended Complaint sets forth multiple examples of concrete expenses incurred by Plaintiff―including creating staff positions focused on domestic threats to freedom of expression; hiring senior staff; and opening a Washington, D.C. office at a cost of hundreds of thousands of dollars―all as a result of the need to defend domestic freedom of expression and its own right to receive information against Defendant's First Amendment violations. *See* Am. Compl. ¶¶ 129–35. Such expenditures and reallocation of resources, caused by Defendant, have perceptibly impaired Plaintiff, and are thus sufficient to satisfy the injury-in-fact requirement of organizational standing. *See Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982); *see also Centro de la Comunidad Hispana de Locust Valley*, 868 F.3d at 110. These allegations also satisfy

Anchorage   New York   Seattle
Bellevue    Portland   Shanghai
Los Angeles San Francisco   Washington, D.C.

www.dwt.com

February 19, 2019
Page 2

the traceability requirement of organizational standing because Plaintiff would not have incurred them in the absence of Defendant's retaliatory threats and actions.

### b. Associational Standing

Plaintiff also satisfies the requirements of associational standing. An organization has associational standing if "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Disability Advocates, Inc. v. N.Y. New York Coal. for Quality Assisted Living, Inc.*, 675 F.3d 149, 157 (2d Cir. 2012). Regarding the first element, many of Plaintiff's members have standing to sue in their own right. Plaintiff's members include individuals who work for CNN, the *Washington Post*, and NBC, as well as multiple individuals who either themselves hold White House press credentials or work for organizations that hold White House press credentials. *See* Am. Compl. ¶ 25. These members, in some cases individually and otherwise through their employers, have been direct targets of Defendant's retaliatory acts and have suffered real consequences. For example, one of Plaintiff's members, Jim Acosta, had his White House press pass revoked after he questioned Defendant at a press conference. *See id.* ¶ 38. Further, a survey of Plaintiff's members found that 1% had been fired or laid off because of Defendant's actions; 2% had been demoted, replaced, or denied an assignment because of Defendant's actions; 4% had been asked to make changes to a piece because their editor or publisher wanted to avoid controversy arising from Defendant's reaction; 31% had "avoided posting, writing, or speaking on a particular topic due to concern about personal or professional repercussions" that would result from Defendant's retaliatory acts; and 52% believed public criticism of the current Administration might put them at risk. *Id.* at ¶ 96. These very real consequences of Defendant's actions provide Plaintiff's members with standing to sue in their own right.

Plaintiffs satisfy the second and third elements of associational standing as well. The interests that this lawsuit seeks to protect are clearly germane to Plaintiff's purpose, as Plaintiff's members include writers, journalists, and literary professionals engaged in the business of reporting on government affairs. Finally, contrary to Defendant's argument, this case would not require the participation of Plaintiff's individual members. Numerous courts have found that where, as here, an association seeks only declaratory and injunctive relief, as opposed to individualized damages, the lawsuit does not require the participation of individual members. *See, e.g.*, *Bldg. & Const. Trades Council of Buffalo, New York & Vicinity v. Downtown Dev., Inc.*, 448 F.3d 138, 150 (2d Cir. 2006).

## II. This Court Has Jurisdiction to Enter the Relief Sought by Plaintiff.

Contrary to Defendant's argument, courts are empowered to enter both declaratory and injunctive relief against the President. *See Knight First Amendment Inst. at Columbia Univ. v. Trump*, 302 F. Supp. 3d 541, 578 (S.D.N.Y. 2018). Separation of powers concerns do not bar courts from entering relief against the President in all cases, *id.*, and certainly not here, where the President is abusing his executive powers to violate the First Amendment. Federal courts have, in the past, approved injunctions against the President. *See Boumediene v. Bush*, 553 U.S. 723 (2008); Jonathan R. Siegel, *Suing the President: Non-statutory Review Revisited*, 97 Colum. L. Rev. 1612

February 19, 2019
Page 3

(1997). And the President has no discretion to violate the First Amendment or to direct agencies to do so. *See Franklin v. Mass.*, 505 U.S. 788, 828 (1992); *Dist. of Columbia v. Trump*, 291 F. Supp. 3d 725, 751 (D.D.C. 2018) (court may enjoin President from "receiving monies to which, under the [Emoluments Clause], he is not entitled"); *Knight First Amendment Inst.*, 302 F. Supp. 3d at 578 (court may enjoin President to undo unconstitutional action of blocking Twitter users).

### III. Plaintiff Plausibly Alleges that Defendant Has Violated the First Amendment Rights of Plaintiff, Its Members, and Others for Whom Plaintiff Advocates.

Plaintiff has plausibly alleged all three elements of a First Amendment retaliation claim─that (1) the plaintiff has a right protected by the First Amendment; (2) the defendant's actions were motivated or substantially caused by plaintiff's exercise of that right; and (3) the defendant's actions injured the plaintiff. *See Dorsett v. City of Nassau*, 732 F.3d 157, 160 (2d Cir. 2013). Defendant incorrectly argues that Plaintiff has not adequately alleged the second and third of these elements.

Regarding the second element, as set forth in the Amended Complaint, Defendant himself has demonstrated that his retaliatory actions were motivated by Plaintiff's and its members' exercise of free speech. Indeed, "President Trump shows open contempt for freedom of the press and the right to dissent, and reveals his illegitimate censorial motives almost daily [via Twitter and social media] . . . . Defendant Trump's statements . . . illustrate his purpose to use executive power to suppress and retaliate against what he perceives to be unfair or unfavorable press coverage." Am. Compl. ¶¶ 13─14. Accordingly, Defendant's own statements—and the temporal connection between Defendant's statements and his retaliatory actions—provide evidence that Defendant's actions were motivated by press coverage of him and his Administration by Plaintiff, its members, and journalists on whose behalf Plaintiff works. *See*, *e.g.*, *Nagle v. Marron*, 663 F.3d 100, 110 (2d Cir. 2011); *National Rifle Ass'n of America v. Cuomo*, 2018 WL 6132464 *10 (N.D.N.Y. 2018); *Housing Works, Inc. v. City of New York*, 72 F. Supp. 2d 402, 424 (S.D.N.Y. 1999).

Regarding the third element, Defendant's actions have undoubtedly injured Plaintiff. As set forth in Section I(b) *supra*, Plaintiff has been forced to undertake numerous expenses and reallocate its resources, as a result of Defendant's retaliatory conduct. In addition, as demonstrated by the survey of Plaintiff's members discussed above, the Amended Complaint alleges that Defendant's conduct has also adversely affected the speech of Plaintiff's members. Finally, Plaintiff also plausibly alleges that Defendant's retaliatory actions have violated Plaintiff's and its members' right to receive speech.

Because Plaintiff has plausibly alleged all three elements of a First Amendment retaliation claim, its case should be allowed to proceed. Plaintiff further notes that it consents to the government's proposed briefing schedule. Thank you for your consideration.

Respectfully submitted,

By: /s/ *Robert Corn-Revere*
    Robert Corn-Revere
*Counsel for Plaintiff PEN American Center, Inc.*