UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PEN AMERICAN CENTER, INC.,<br><br>                              Plaintiff,<br><br>         - against -<br><br>DONALD J. TRUMP, in his official capacity as<br>President of the United States,<br><br>                              Defendant. | No. 18 Civ. 9433 (LGS) |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION TO
DISMISS PLAINTIFF'S AMENDED COMPLAINT**

GEOFFREY S. BERMAN
United States Attorney for the
Southern District of New York
86 Chambers Street, Third Floor
New York, New York 10007
Tel:    (212) 637-2715
*Attorney for Defendant*

Steven J. Kochevar
*Assistant United States Attorney*
    – Of Counsel –

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................1

BACKGROUND .................................................................................................................2

ARGUMENT ....................................................................................................................4

    I.    THE COURT LACKS SUBJECT MATTER JURISDICTION OVER
    PLAINTIFF'S CLAIMS ...............................................................................5

    A.    Plaintiff Lacks Standing.................................................................................5

        1.    Plaintiff Lacks Associational Standing to Bring Claims On Behalf
        of Its Members ....................................................................................5

        2.    Plaintiff Lacks Organizational Standing to Bring Claims On Its
        Own Behalf ........................................................................................13

    B.    The Court Lacks Jurisdiction to Grant Declaratory or Injunctive Relief
    Against the President in This Context .................................................................20

    II.    PLAINTIFF'S COMPLAINT FAILS TO STATE A PLAUSIBLE
    CLAIM UPON WHICH RELIEF CAN BE GRANTED ....................................22

    A.    Legal Standards...........................................................................................22

    B.    Plaintiff Fails to State a Plausible Claim for Relief for Violations of the
    First Amendment .......................................................................................22

CONCLUSION.................................................................................................................25

i

# TABLE OF AUTHORITIES

**Cases**                                                                 Page(s)

*ACLU v. National Sec. Agency*,
   493 F.3d 644 (6th Cir. 2007) ................................................................. 9

*An v. City of New York*,
   230 F. Supp. 3d 224 (S.D.N.Y. 2017) .................................................. 10

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .............................................................................. 22

*Bano v. Union Carbide Corp.*,
   361 F.3d 696 (2d Cir. 2004) .......................................................... 6, 13

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ...................................................................... 22, 24

*Cacchillo v. Insmed, Inc.*,
   *638 F.3d 401 (2d Cir. 2011)* .............................................................. 5

*Centro de la Comunidad Hispana de Locust Valley v. Town of Oyster Bay*,
   868 F.3d 104 (2d Cir. 2017) ......................................................... 14, 15

*Charlotte E. v. Safir*,
   156 F.3d 340 (2d Cir. 1998) ............................................................ 6, 7

*City of Los Angeles v. Lyons*,
   461 U.S. 95 (1983) ........................................................................ 10, 11

*Clapper v. Amnesty Int'l USA*,
   568 U.S. 398 (2013) .............................................................................. 9

*Dorsett v. County of Nassau*,
   732 F.3d 157 (2d Cir. 2013) ...................................................... 23, 24, 25

*Farrell v. Burke*,
   449 F.3d 470 (2d Cir. 2006) .......................................................... 6, 24

*Franklin v. Massachusetts*,
   505 U.S. 788 (1992) ................................................................ 20, 21, 22

*Friends of the Earth v. Laidlaw Environmental Servs. (TOC)*,
   528 U.S. 167 (2000) ........................................................................ 5, 19

*FW/PBS, Inc. v. Dallas*,
   493 U.S. 215 (1990) .............................................................................. 7

*Global Network Commc'ns, Inc. v. City of New York*,
   458 F.3d 150 (2d Cir. 2006) ............................................................... 22

*Greenwich Citizens Comm., Inc. v. Cntys. of Warren and Wash. Indus. Dev. Agency*,
   77 F.3d 26 (2d Cir. 1996) ................................................................... 22

*Havens Realty Corp. v. Coleman*,
   455 U.S. 363 (1982) ............................................................................ 15

*Heldman on Behalf of T.H. v. Sobol*,
   962 F.2d 148 (2d Cir. 1992) ............................................................... 18

*Hunt v. Washington State Apple Advertising Comm'n*,
   432 U.S. 333 (1977) .............................................................................. 6

*Knight First Amendment Institute at Columbia University v. Trump*,
   302 F. Supp. 3d 541 (2018) ......................................................... 21, 22

*Laird v. Tatum,*
    408 U.S. 1 (1972) ...................................................................................... 9, 10, 18
*Lujan v. Defenders of Wildlife,*
    504 U.S. 555 (1992) ............................................................................ 14, 18, 19
*Marcavage v. City of New York,*
    689 F.3d 98 (2d Cir. 2012) ........................................................................ 6, 10, 11
*Mississippi v. Johnson,*
    71 U.S. 475 (1866) .......................................................................................... 20
*Morrison v. Nat'l Australia Bank Ltd.,*
    547 F.3d 167 (2d Cir. 2008) .............................................................................. 5
*New York Civil Liberties Union v. New York City Trans Authority,*
    684 F.3d 286 (2d Cir. 2012) ............................................................................ 18
*New York State Citizens' Coalition for Children v. Velez,*
    629 Fed. App'x 92 (2d Cir. 2015) ..................................................................... 16
*Nnebe v. Daus,*
    644 F.3d 147 (2d Cir. 2011) ............................................................................. 16
*Olsen v. Stark Homes, Inc.,*
    759 F.3d 140 (2d Cir. 2014) ............................................................................. 16
*Ragin v. Harry Macklowe Real Estate Co.,*
    6 F.3d 898 (2d Cir. 1993) ................................................................................. 16
*Rent Stabilization Ass'n of NYC v. Dinkins,*
    5 F.3d 591 (2d Cir. 1993) ................................................................................. 13
*Robinson v. Overseas Military Sales Corp.,*
    21 F.3d 502 (2d Cir. 1994) ................................................................................. 5
*Rothstein v. UBS AG,*
    708 F.3d 82 (2d Cir. 2013) .......................................................................... 11, 18
*Smith v. Campbell,*
    782 F.3d 93 (2d Cir. 2015) ............................................................................... 23
*Summers v. Earth Island Institute,*
    555 U.S. 488 (2009) ................................................................................... 6, 7, 8
*United Presbyterian Church in the U.S.A. v. Reagan,*
    738 F.2d 1375 (D.C. Cir. 1984) .......................................................................... 9
*Warth v. Seldin,*
    422 U.S. 490 (1975) ........................................................................................ 13
*Washington v. Trump,*
    276 F. Supp. 3d 174 (S.D.N.Y. 2017) ......................................................... *passim*
*Whitmore v. Arkansas,*
    495 U.S. 149 (1990) ........................................................................................ 10

## PRELIMINARY STATEMENT

Plaintiff PEN American, Inc. ("PEN American"), an association of writers and media professionals, claims that defendant President Trump has retaliated against news coverage critical of his Administration.  This Court lacks jurisdiction over plaintiff's claims because plaintiff lacks standing, and this Court may not enter plaintiff's requested relief against the President.  In addition, plaintiff's amended complaint fails to state a plausible claim for relief.

Plaintiff lacks standing to bring claims on behalf of its members.  Plaintiff identifies only one member by name—Jim Acosta, whose sole claim of injury was redressed months ago.  Otherwise, plaintiff has failed to identify any member, let alone any member with standing in his or her own right.  To the extent that plaintiff has alleged injuries to its members, such injuries are too subjective and insufficiently imminent to support this Court's jurisdiction.  Plaintiff's claims would also require the participation of individual members in this suit.

Plaintiff lacks standing to bring claims on its own behalf.  Plaintiff claims it has spent resources monitoring defendant, but these voluntary expenditures were part of plaintiff's established mission and therefore cannot support standing.  *See Citizens for Responsibility and Ethics in Washington v. Trump*, 276 F. Supp. 3d 174, 191 (S.D.N.Y. 2017).  Plaintiff also has not adequately alleged that such expenditures are traceable to defendant or redressable by this Court.

This Court cannot enter plaintiff's requested prospective relief: an injunction controlling the official, discretionary acts of a sitting President and a declaration that his official, discretionary actions were unlawful.  The Supreme Court has repeatedly held that such injunctive relief would be "extraordinary" and beyond the power of the federal courts.

Plaintiff's amended complaint fails to state a plausible claim for relief.  Plaintiff has failed to allege that its own speech or the speech of any of its members with standing motivated defendant to take any action—or even that defendant was aware of any such speech.  Plaintiff

has also failed to adequately allege injury.  Its allegations of chilled speech and receipt of information are too generalized to support relief: plaintiff has not identified any speaker—a member of plaintiff or not—whose speech has actually been chilled.

The Court should dismiss plaintiff's amended complaint in its entirety for lack of jurisdiction and failure to state a claim.

## BACKGROUND

Plaintiff PEN American, Inc. ("PEN American"), an association of writers and media professionals, advocates on behalf of writers targeted for their work.  Amended Complaint ("AC") ¶ 24, Dkt. No. 38.  Plaintiff's activities include "monitor[ing] the government's interactions with writers and journalists and produc[ing] informational content related to its advocacy work."  *Id.*  Plaintiff's members allegedly "produce, and plan to produce in the future, work . . . that is often critical of . . . President [Trump] and his Administration."  *Id.* ¶ 27. Plaintiff has identified only one of its members by name, non-party Jim Acosta, a reporter for the Cable News Network ("CNN").  *See id.* ¶ 38.  Otherwise, plaintiff has not specifically identified any of its members or their speech.

Plaintiff alleges that defendant has taken or encouraged actions intended to chill speech critical of himself or his administration.  Plaintiff alleges four retaliatory actions taken or encouraged by defendant.  First, plaintiff alleges that, on November 7, 2018, White House Press Secretary Sarah Huckabee Sanders suspended Acosta's press pass after Acosta questioned defendant.[1] AC ¶ 38–44.  After Acosta and CNN filed their own lawsuit, *CNN v. Trump*, No. 18-

---

[1] Similarly, plaintiff alleges that defendant's subordinates have on two occasions excluded specific reporters, or reporters from certain organizations, from specific, completed White House press events.  *See* AC ¶ 34 (certain news organizations denied access to February 24, 2017 press event in then-White House Press Secretary Sean Spicer's office); ¶ 37 (alleging non-party non-member Kaitlan Collins excluded from July 25, 2018 Rose Garden event).

cv-2610 (TJK) (D.D.C.), Acosta's pass was restored.  AC ¶ 44.  Acosta and CNN dismissed their lawsuit.  *Id.*; *see* Notice of Voluntary Dismissal, *CNN v. Trump*, No. 18-cv-2610 (TJK) (D.D.C.), ECF No. 28.

Second, plaintiff alleges that, on August 15, 2018, defendant revoked the security clearance of non-party non-member John Brennan, the former director of the Central Intelligence Agency, because Brennan criticized defendant.  AC ¶¶ 49, 53.

Third, plaintiff alleges that, on October 11, 2018, the United States Postal Service ("USPS") proposed increases in shipping rates, including a proposed increase of 12 percent on the rate for a delivery service used by the online retailer Amazon.com, Inc. ("Amazon").  *Id.* ¶ 72.  Similarly, plaintiff alleges that the United States Postal Service Task Force (the "USPS Task Force") recommended increased rates for certain shipments, which would include the majority of Amazon's deliveries.  *Id.* ¶ 73.  Plaintiff alleges that USPS and the USPS Task Force would not have made these proposals had defendant not expressed a desire to punish Amazon for the reporting of the *Washington Post*, a newspaper owned by non-party non-member Jeff Bezos, the Chief Executive Officer and principal shareholder of Amazon.  *Id.* ¶¶ 4, 70, 72–73.

Fourth, plaintiff alleges that, on November 20, 2017, the Department of Justice ("DOJ") filed a lawsuit to block the merger of AT&T, Inc. ("AT&T") and Time Warner Cable ("Time-Warner"), the parent company of CNN, to punish CNN for its critical coverage of defendant's administration.  AC ¶ 79.  Specifically, plaintiff alleges that defendant and his associates made statements critical of CNN and the proposed merger.  *See id.* ¶¶ 75–77.  Plaintiff further alleges that DOJ had not filed a lawsuit to block a vertical merger similar to the proposed merger of CNN and Time-Warner since the 1970s, and that the lawsuit was unsuccessful.  *Id.* ¶¶ 79, 81.

Other than these alleged actions, plaintiff alleges in broad terms that defendant has

criticized the press and has threatened—although not followed through on—various possibly retaliatory actions.  These other alleged actions fall into three categories.  First, plaintiff alleges that defendant's subordinates have suggested possible future regulatory actions against Google, Facebook, and other unspecified social media companies. AC ¶¶ 83–85.  Second, plaintiff alleges that defendant criticized the National Broadcasting Company ("NBC") and suggested that the broadcast licenses of network news corporations should be revoked.  *See id.* ¶¶ 88–91.  Third, plaintiff alleges that defendant and his associates have threatened to deny journalists access to White House press conferences and news events.  *Id.* ¶¶ 33, 35–36, 41.

On October 16, 2018, plaintiff filed its complaint initiating the present action.  Complaint, Dkt. No. 1.  On December 20, 2018, defendant informed the Court of the bases for his anticipated motion to dismiss.  Letter dated December 20, 2018, Dkt. No. 24.  On February 6, 2019, plaintiff filed its amended complaint.  *See* AC.  In the amended complaint, plaintiff asserts three claims under the First Amendment.  First, plaintiff claims that defendant's alleged actions amount to retaliation for critical reporting.  *Id.* ¶¶ 115–23.  Second, plaintiff claims that defendant's alleged actions amount to retaliatory threats.  *Id.* ¶¶ 124–30.  Third, plaintiff claims defendant's alleged actions violate their right to receive information.  *Id.* ¶¶ 131–36.  Plaintiff seeks declaratory and injunctive relief, namely a declaration that defendant's allegedly retaliatory actions violated the First Amendment and an injunction forbidding defendant from directing any subordinate to take any official action in retaliation for speech critical of defendant's administration.  *See id.* Prayer for Relief.

## **ARGUMENT**

The Court should dismiss plaintiff's amended complaint for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) and for failure to state a plausible claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6).

## I.   THE COURT LACKS SUBJECT MATTER JURISDICTION OVER PLAINTIFF'S CLAIMS

On a motion to dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, the plaintiff carries the burden of establishing that the Court has subject matter jurisdiction to adjudicate her complaint. *See Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 507 (2d Cir. 1994). "The court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff, but jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *Morrison v. Nat'l Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (internal quotation marks, citation, and brackets omitted).

### A.   Plaintiff Lacks Standing

The Court should dismiss plaintiff's complaint for lack of jurisdiction because plaintiff has failed to establish Article III standing. "[S]tanding is a federal jurisdictional question determining the power of the court to entertain the suit." *Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 404 (2d Cir. 2011) (internal quotation marks omitted).

> [T]o satisfy Article III's standing requirements, a plaintiff must show (1) it has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Friends of the Earth v. Laidlaw Environmental Servs. (TOC)*, 528 U.S. 167, 181–82 (2000). "[A] plaintiff must demonstrate standing for each claim and form of relief sought." *Cacchillo*, 638 F.3d at 404.

#### 1.   Plaintiff Lacks Associational Standing to Bring Claims On Behalf of Its Members

Plaintiff lacks standing to bring claims on behalf of any its members—or any non-member allegedly targeted by defendant. "Federal courts as a general rule allow litigants to

assert only their own legal rights and interests, and not the legal rights and interests of third

parties." *Farrell v. Burke*, 449 F.3d 470, 494 (2d Cir. 2006).  Associational standing is a

"narrow exception" to the general rule against third-party standing that allows an association to

sue on behalf of its members.  *Bano v. Union Carbide Corp.*, 361 F.3d 696, 715 (2d Cir. 2004).

To establish associational standing, a plaintiff must show that:

> (a) its members would otherwise have standing to sue in their own right; (b) the
> interests it seeks to protect are germane to the organization's purpose; and
> (c) neither the claim asserted nor the relief requested requires the participation of
> individual members in the lawsuit.

*Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 343 (1977); *accord Bano*,

361 F.3d at 713.  In addition, unless all of the members of an organization are affected by the

challenged activities, an organization must name its affected members to establish standing.

*Summers v. Earth Island Institute*, 555 U.S. 488, 498–99 (2009).  In the present case, plaintiff

fails the first and third prongs of the *Hunt* test.

Plaintiff fails the first prong of the *Hunt* test, including the *Summers* naming requirement,

because it has failed to identify any member with standing.  Plaintiff's amended complaint

identifies only one of its members by name, Jim Acosta, a reporter for CNN.  *See* AC ¶¶ 33, 35,

38.  Acosta does not have standing to sue in his own right because "[a] plaintiff seeking

injunctive or declaratory relief cannot rely on past injury to satisfy the injury requirement."

*Deshawn E. by Charlotte E. v. Safir*, 156 F.3d 340, 344 (2d Cir. 1998); *see Marcavage v. City of

New York*, 689 F.3d 98, 103 (2d Cir. 2012).  The only injury Acosta is alleged to have suffered is

the November 7, 2018, revocation of his press pass.  *See* AC ¶¶ 38–39.  Acosta brought his own

lawsuit challenging this revocation in the United States District Court for the District of

Columbia.  *See CNN v. Trump*, No. 18-cv-2610 (TJK) (D.D.C.); AC ¶ 42.  On November 19,

2018, after the entry of a temporary restraining order in that case, Acosta's pass was restored,

and Acosta voluntarily dismissed his case.  *See* Docket Entry dated Nov. 16, 2018, *CNN v. Trump*, No. 18-cv-2610 (TJK) (D.D.C.) (noting grant of temporary restraining order); Notice of Voluntary Dismissal, *CNN v. Trump*, No. 18-cv-2610 (TJK) (D.D.C.), ECF No. 28, AC ¶¶ 43–44.  Accordingly, Acosta currently lacks an injury sufficient to support standing.[2]  The temporary revocation of a press pass—already the subject of a prior lawsuit brought and dismissed by the actual holder of the pass—cannot establish standing for Acosta or plaintiff to seek declaratory or injunctive relief in the present case.  *See Deshawn*, 156 F.3d at 344.

Other than Acosta, plaintiff has failed to identify by name any of its members allegedly affected by defendant's actions.  This alone is fatal to plaintiff's associational standing.  The Supreme Court has repeatedly held that an organization asserting associational standing must name "at least one identified member" with standing.  *Summers*, 555 U.S. at 498; *see FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 235 (1990) (explaining that affidavit was deficient because it failed to identify individuals).  "This requirement of naming the affected members has never been dispensed with in light of statistical probabilities, but only where all the members of the organization are affected by the challenged activity."  *Summers*, 555 U.S. at 498–99.  Except for Acosta—who lacks standing—plaintiff has not identified any specific member who was the alleged target of any action by defendant, whose speech was chilled or affected by defendant's alleged actions, or who failed to receive information or speech as a result of defendant's alleged actions.  Moreover, the "all-members" exception to the *Summers* naming requirement does not apply here.  Plaintiff alleges that a research firm surveyed its members regarding the consequences of defendant's alleged actions.  AC ¶ 96.  According to plaintiff's own survey,

---

[2] Acosta also lacks standing because a favorable decision by this Court would not redress the revocation of his press pass, which was returned months ago.

most of plaintiff's members allegedly have not been affected by defendant's actions, and forty-eight percent do not believe they are at risk. *See id.* The *Summers* naming requirement therefore applies in full here, and plaintiff cannot establish associational standing without identifying, by name, at least one specific member with standing. *See Summers*, 555 U.S. at 498–99.

Even if the *Summers* naming requirement did not apply, plaintiff would still fail the first prong of the *Hunt* test because plaintiff has failed to allege that its members suffered injuries-in-fact traceable to defendant's actions and redressable by the Court. With respect to injury, plaintiff alleges in broad terms that some of its members' speech and receipt of information have been chilled by defendant's actions. *See* AC ¶¶ 93–101. For instance, plaintiff alleges that its survey found that "31 percent [of plaintiff's members] [have] avoided posting, writing, or speaking on a particular topic due to concern about personal or professional repercussions." AC ¶ 96 (internal quotation marks omitted).[3] Plaintiff further alleges that such chilling effects have "jeopardize[d] [plaintiff's members'] access to information and commentary about [defendant's] Administration." AC ¶ 101; *see* AC ¶¶ 99–101. However, except for Acosta, plaintiff has not alleged any particular action taken against plaintiff's members nor alleged that any source of information has altered its speech in any particular way. Except for Acosta, each of defendant's actions alleged in the complaint are directed at non-member non-parties, none of whom has allegedly curtailed its speech. As a result, plaintiff's allegations of chilling of its members'

---

[3] Plaintiff also alleges that its survey found that "1 percent [of plaintiff's members have] been fired or laid off because of the Defendant's actions; 2 percent [have] been demoted, replaced, or denied an assignment because of the Defendant's actions; [and] 4 percent [have] been asked to make changes to a piece because their editor or publisher wanted to avoid controversy arising from Defendant's reactions." AC ¶ 96. Plaintiff does not provide any additional allegations elaborating on these alleged instances of chilling, which are each allegedly the result of actions taken by plaintiff's members' employers, rather than defendant. These allegations fail to establish standing for the same reasons as plaintiff's more generalized allegations of chilling.

speech and receipt of information fail to establish standing, first because any such chilling is subjective and, second, because it is insufficiently imminent.

First, the Supreme Court has repeatedly held that allegations of subjective chill, in the absence of concrete actions taken against a plaintiff, are insufficient to establish standing for purposes of a First Amendment claim against the Executive branch.  In *Laird v. Tatum*, 408 U.S. 1 (1972), plaintiffs challenged the United States Army's alleged surveillance of domestic civilian political activity in the late 1960s.  *Id.* at 2–5.  But plaintiffs did not allege any specific action taken against them and instead based their claims on an alleged chilling effect created by their disagreement with the Army's activities and the possibility of future actions that might be taken against them.  *See id.* at 9, 13.  The Supreme Court concluded that the federal courts lacked jurisdiction over plaintiffs' claims.  *Id.* at 10, 13–15.  In drawing a line between justiciable cases involving a First Amendment chilling effect and those cases that do not present a justiciable controversy, the Court observed that

> [i]n none of [the justiciable] cases . . . did the chilling effect arise merely from the individual's knowledge that a governmental agency was engaged in certain activities or from the individual's concomitant fear that, armed with the fruits of those activities, the agency might in the future take some other and additional action detrimental to that individual.  Rather, in each of [the justiciable] cases, the challenged exercise of governmental power was regulatory, proscriptive, or compulsory in nature, and the complainant was either presently or prospectively subject to the regulations, proscriptions, or compulsions that he was challenging.

*Id.* at 11.  The Court grounded its analysis in separation-of-powers principles, observing that a contrary result "would have the federal courts as virtually continuing monitors of the wisdom and soundness of Executive action; such a role is appropriate for the Congress."  *Id.* at 15.  The Supreme Court and courts of appeals have since reaffirmed *Laird*'s holding.  *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 417–18 (2013) (citing *ACLU v. National Sec. Agency*, 493 F.3d 644, 661–62 (6th Cir. 2007)); *United Presbyterian Church in the U.S.A. v. Reagan*, 738

F.2d 1375, 1378 (D.C. Cir. 1984) ("[A]llegations of a subjective chill are not an adequate

substitute for a claim of specific present objective harm or a threat of specific future harm."

(quotation marks omitted)).

   *Laird* controls the present case.  Like the *Laird* plaintiffs, plaintiff has not alleged that its

members are "presently or prospectively subject to the . . . proscriptions[] or compulsions that

[it] is challenging."  *Laird*, 408 U.S. at 11. Instead, plaintiff's claims rest on its members'

speculative fears of future actions and their disapproval of defendant's past actions—none of

which plaintiff has alleged was unlawful, apart from any alleged retaliatory taint.  Under *Laird*,

such subjective concerns are insufficient to establish standing.

   Second, the injuries alleged by plaintiff are insufficiently imminent to support standing

for declaratory or injunctive relief.  "A plaintiff seeking injunctive or declaratory relief cannot

rely on past injury to satisfy the injury requirement . . . ."  *Deshawn*, 156 F.3d at 344.  Nor can

mere "[a]llegations of possible future injury . . . satisfy the requirements of Art. III."  *Whitmore*

*v. Arkansas*, 495 U.S. 149, 158 (1990).  Instead, "[t]o obtain *prospective* relief, such as a

declaratory judgment or an injunction, a plaintiff must show, *inter alia*, a sufficient likelihood

that he or she will again be wronged in a similar way.  That is, a plaintiff must demonstrate a

certainly impending future injury."  *Marcavage*, 689 F.3d at 103 (internal quotation marks,

brackets, and citation omitted); *see City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983)

("[Injunctive relief] is unavailable absent a showing of irreparable injury, a requirement that

cannot be met where there is no showing of any real or immediate threat that the plaintiff will be

wronged again—a likelihood of substantial and immediate irreparable injury." (internal

quotation marks omitted)); *Whitmore*, 495 U.S. at 158; *An v. City of New York*, 230 F. Supp. 3d

224, 231 (S.D.N.Y. 2017) (Schofield, J.) ("Declaratory judgment, like an injunction, is a form of

prospective relief that requires a plaintiff to show 'a sufficient likelihood that he [or she] will again be wronged in a similar way.'" (quoting *Marcavage*, 689 F.3d at 103)).

Plaintiff in the present case has failed to establish that its members, including Acosta, face any "certainly impending future injury," and so cannot seek declaratory or injunctive relief. *Marcavage*, 689 F.3d at 103 (internal quotation marks omitted).  Plaintiff's allegations of chill are too vague and generalized to support a "likelihood of substantial and immediate irreparable injury" to any of its members.  *Lyons*, 461 U.S. at 111.[4]  Indeed, some of plaintiff's allegations undermine any assertion of future First Amendment harms.  Plaintiff's members allegedly "plan to produce in the future, work . . . that is often critical of . . . [defendant] and his Administration." AC ¶ 27.  Plaintiff's amended complaint also appears to acknowledge that any alleged chill on speech has been or could be "braved and overcome by diligent and courageous reporters."[5]  *Id.* ¶ 94.  In light of these allegations—and in the absence of any specific allegations of imminent future action by defendant—plaintiff has failed to establish that any of its members have standing to seek prospective relief.

Plaintiff's amended complaint also fails to establish that any of its members satisfy the traceability requirement of standing.  "The traceability requirement for Article III standing means that the plaintiff must demonstrate a causal nexus between the defendant's conduct and [plaintiff's] injury." *Rothstein v. UBS AG*, 708 F.3d 82, 91 (2d Cir. 2013) (internal quotation marks omitted).  Plaintiff's allegations of chilling are too subjective and generalized to establish

---

[4] With respect to plaintiff's allegations of chilling based on adverse employer decisions, plaintiff has not alleged any basis on which to conclude that such actions are likely to occur again in the future.  *See* AC ¶ 96.

[5] To the extent plaintiff is asserting the costs of overcoming a subjective chilling effect as the basis for its claims, plaintiff lacks standing for the same reasons allegations of an actual subjective chilling effect fail to establish standing.

a causal nexus with any alleged action taken by defendant.  Except for Acosta, none of plaintiff's members—none of whom are identified—are alleged to have been the target of any particular action by defendant.  In addition, some of the chilling effects alleged by plaintiff are the direct product of its members' employers' decisions, with no additional allegations regarding how any employer's decision could be traced to defendant.  *See* AC ¶ 96.  Moreover, plaintiff has not alleged that any non-member allegedly targeted by defendant, or Acosta, has altered its speech in any way.  Specifically, plaintiff has not alleged that Acosta, Brennan, Amazon, the *Washington Post*, CNN, AT&T, Time-Warner, or NBC have altered their speech as a result of defendant's actions.  Accordingly, plaintiff has failed to establish the necessary link between alleged chilling effects on its members—as speakers or as recipients of information—and any action on defendant's part.

Plaintiff's members also fail to satisfy the third element of standing, redressability.  To satisfy the redressability requirement, it must be "likely, as opposed to merely speculative, that [a plaintiff's] injury will be redressed by a favorable decision."  *Laidlaw*, 528 U.S. at 181.  The effects of any declaratory or injunctive relief here would be speculative because plaintiff has not explained in sufficient detail how its members' speech or receipt of information has been affected by any particular action taken by defendant that might be enjoined or declared unlawful.  For instance, some of the generalized chilling effects alleged by plaintiff were the product of decisions made by plaintiff's members' employers.  *See* AC ¶ 96.  Plaintiff's amended complaint provides no basis on which to conclude that plaintiff's members' employers would make different employment or editorial decisions were this Court to grant plaintiff's requested relief.  Moreover, Federal Rule of Civil Procedure 65(d)(1)(B)-(C) requires that every injunction "state its terms specifically; and describe in reasonable detail . . . the . . . acts restrained or required."

Plaintiff's amended complaint does not provide sufficiently detailed allegations for this Court to craft an injunction complying with Rule 65 that is also likely to redress any particularized injury to plaintiffs' members.  In sum, plaintiff has failed to establish that any of its members have standing.

Even were plaintiff to establish that some of its members had standing, it would also fail the third prong of *Hunt*'s associational standing test, because "'the fact and extent' of the injury that gives rise to [its] claims for injunctive relief 'would require individualized proof.'"  *Bano*, 361 F.3d at 714 (quoting *Warth v. Seldin*, 422 U.S. 490, 515–16 (1975)); *accord Rent Stabilization Ass'n of NYC v. Dinkins*, 5 F.3d 591, 596–97 (2d Cir. 1993).  The injury upon which plaintiff's claims ostensibly rest is an alleged chilling of speech.  But plaintiff's amended complaint points out how these alleged effects vary across differently situated journalists.  *See* Compl. ¶ 97 (contrasting "large companies [that] have significant resources . . . but . . . also provide . . . more opportunities for using regulatory measures as a form of retaliation" with "[s]maller outlets, independent media, freelancers, [and] other more vulnerable populations of writers").  Under plaintiff's own theory of the case, determining the fact and extent of any alleged chilling will require individualized proof concerning, among other things, the size of a given organization that employs or speaks to a particular member of plaintiff; whether the member's employer or source of information has been allegedly targeted by defendant; and the member's speech and receipt of information.  Plaintiff has failed to establish that it could litigate this case without the participation of specific members.  Accordingly, plaintiff lacks associational standing.

### 2.   Plaintiff Lacks Organizational Standing to Bring Claims On Its Own Behalf

Plaintiff lacks standing to bring any claims on its own behalf.  To bring claims on its own behalf, plaintiff bears the burden of establishing organizational standing by showing: "(i) an

imminent injury in fact to itself as an organization (rather than to its members) that is distinct and palpable; (ii) that its injury is fairly traceable to [allegedly retaliatory actions]; and (iii) that a favorable decision would redress its injuries." *Centro de la Comunidad Hispana de Locust Valley v. Town of Oyster Bay*, 868 F.3d 104, 109 (2d Cir. 2017) ("*Centro*") (internal quotation marks omitted). Plaintiff faces a heightened burden to establish the latter two elements because it is challenging Executive actions allegedly taken or threatened against third parties. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561–62 (1992). Plaintiff has failed to establish any of the necessary elements of organizational standing.

First, the injuries plaintiff has allegedly suffered as an organization are insufficient to support standing. Plaintiff's amended complaint alleges no actions taken or threatened against itself as an organization. Plaintiff has not alleged any violation of its right to free speech. On the contrary, plaintiff speech allegedly remains robust. *See, e.g.*, AC ¶ 111. Plaintiff alleges it "has held large events and protests, initiated widely circulated petitions, released detailed research reports, and published a number of blog posts, articles, and statements" concerning defendant, his actions, and his Administration. *Id.* ¶ 110.

Plaintiff characterizes its expenditures on such activities, including its alleged redirection of funds from overseas operations to domestic operations, as harms to plaintiff as an organization. *See* AC ¶¶ 102–11. These alleged expenditures and changes to plaintiff's budgeting priorities are insufficient to support standing. In *Centro*, the Second Circuit explained that "a perceptible impairment of an organization's activities is necessary for there to be an injury in fact." *Centro*, 868 F.3d at 110 (internal quotation marks omitted). Specifically, an organization can establish injury "where an organization diverts its resources away from its current activities" or "establishes that it spent money to combat activity that harms its

organization's core activities." *Id.* at 111 (internal quotation marks omitted).  Thus, in *Centro*, a plaintiff organization established standing by showing it would need to spend money (otherwise spent elsewhere) responding to a local ordinance dispersing day laborers the plaintiff sought to organize.  *See id.* at 110–11.  The ordinance impaired the organization's activities both by dispersing laborers and through the possibility of erroneous enforcement of the ordinance against the plaintiff's members.  *Id.*  Responding to local ordinances was not part of the organization's "current activities."  *Id.*  In short, in *Centro* the plaintiff was forced to expend resources to continue in its core mission (organizing day laborers) which was impaired by the ordinance it challenged (dispersing day laborers); that injury was sufficient to support standing.

In the present case, plaintiff's increased domestic advocacy may be a response to defendant's Administration as a political matter, but it is not a response to defendant's alleged actions in the practical terms of *Centro*.  Specifically, plaintiff has not alleged that any of defendant's alleged actions have perceptibly impaired plaintiff's established activities, which include "monitor[ing] the government's interactions with writers . . . and produc[ing] informational content related to its advocacy work" *Id.* ¶ 24.  On the contrary, plaintiff alleges it has increased precisely these same established activities in response to defendant's actions.  *See* AC ¶ 111.  Such increases are not a response to a practical obstacle put in the way of plaintiff's activities and therefore do not amount to an injury establishing standing under *Centro*.

The precedents undergirding *Centro* reinforce this conclusion.  In *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982), the Supreme Court held that a plaintiff organization had standing because the defendant apartment complex owner's racial steering practices impaired the plaintiff's ability to provide counseling and referral services to promote equal access to housing. *Id.* at 378–79.  In *Havens Realty*, like *Centro*, standing was based on practical interference with a

plaintiff's established activities, unlike in the present case where plaintiff has not alleged any practical interference with its established activities.  Similarly, in *Nnebe v. Daus*, 644 F.3d 147 (2d Cir. 2011), the Second Circuit held that the New York Taxi Workers Alliance ("NYTWA") had standing to challenge New York City's policy of automatically suspending taxi drivers arrested on criminal charges because NYTWA suffered a "perceptible opportunity cost" when it assisted suspended drivers, could have allocated its resources elsewhere, and "allocated resources to assist drivers only when [a defendant] initiated proceedings against one of its members."  *Id.* at 156–58; *see also New York State Citizens' Coalition for Children v. Velez*, 629 Fed. App'x 92, 94 (2d Cir. 2015) (summ. order) (applying *Nnebe* and remanding for further proceedings because plaintiff had failed to establish "perceptible opportunity cost" associated with the program plaintiff sought to challenge); *Olsen v. Stark Homes, Inc.*, 759 F.3d 140, 158 (2d Cir. 2014) (diversion of resources from advocacy and counseling activities conferred organizational standing); *Ragin v. Harry Macklowe Real Estate Co.*, 6 F.3d 898, 905 (2d Cir. 1993) (plaintiff had standing where "[plaintiff] established that its activities related to identifying and counteracting the Defendants' advertising practices detracted [sic] the attention of [plaintiff's] staff members from their regular tasks" (internal quotation marks and brackets omitted) (second alteration in original)).  Plaintiff in the present case has not adequately alleged that it paid a "perceptible opportunity cost" because its alleged activities in response to defendant's actions do not depart from or impair its established operations and mission. *Nnebe*, 644 F.3d at 157; *compare* AC ¶ 24 (describing plaintiff's mission and activities) *with id.* ¶¶ 110–11 (describing same activities in furtherance of plaintiff's mission in response to defendant's alleged actions).

This Court's decision in *Citizens for Responsibility and Ethics in Washington v. Trump*,

276 F. Supp. 3d 174 (S.D.N.Y. 2017) ("*CREW*"), further demonstrates why plaintiff has failed to adequately allege injury on the basis of its expenditures.  In *CREW*, the Center for Responsibility and Ethics in Washington ("CREW"), a government ethics organization, sued defendant President Trump for alleged violations of the Emoluments Clauses in connection with monies received through defendant's businesses.  *CREW*, 276 F. Supp. 3d at 181–83.  As a basis for organizational standing, CREW asserted similar injuries to those asserted by plaintiff here, namely the diversion of resources from "mission-critical work" to efforts to "to identify and counteract Defendant's alleged [actions], including through . . . the hiring of two additional senior attorneys, as well as its efforts to explain the alleged violations to stakeholders, including the press, and assist and counsel others in counteracting Defendant's alleged violations."  *Id.* at 189 (internal quotation marks omitted); *compare id. with* AC ¶¶ 102–111.  Applying *Centro* and similar precedents, this Court held that CREW had failed to adequately allege an injury in fact:

> CREW fails to allege either that Defendant's actions have impeded its ability to perform a particular mission-related activity, or that it was forced to expend resources to counteract and remedy the adverse consequences or harmful effects of Defendant's conduct. . . . CREW . . . may have diverted some of its resources to address conduct it may consider unconstitutional, but which has caused no legally cognizable adverse consequences, tangible or otherwise, necessitating the expenditure of organizational resources.
> . . .
> CREW's decision to investigate and challenge Defendant's actions . . . at the expense of its other initiatives reflects a choice about where and how to allocate its resources—one that almost all organizations with finite resources have to make.

*CREW*, 276 F. Supp. 3d at 190–91.  The reasoning of *CREW* applies directly to the present case. Like CREW, the present plaintiff has not alleged that it was forced to expend any resources to remedy tangible adverse consequences to its operations, and instead has alleged a voluntary expansion of established activities.  This is insufficient to establish the injury necessary for organizational standing.

To the extent plaintiff has alleged other injuries to itself as an organization, they are also insufficient to support standing.   Plaintiff has alleged that its First Amendment right to receive information has been impaired.  *See* AC ¶¶ 112–14.  However, plaintiff has not identified any specific source from which its receipt of information has actually been disrupted.  *See id.*  More broadly, plaintiff has failed to adequately allege that any particular speaker has actually been chilled.  *See infra*.  To the extent plaintiff has alleged any source's speech has been chilled, such subjective chilling cannot support standing—for a source as speaker or plaintiff as listener—under *Laird v. Tatum*, 408 U.S. 1 (1972).  *See supra* Section I.A.1.

Plaintiff has also failed to adequately allege that it satisfies the latter two elements of standing, traceability and redressability.  These elements are "ordinarily substantially more difficult to establish" in a suit like the present one challenging government action against a non-party because they "ordinarily hinge on the response of the regulated (or regulable) third party to the government action or inaction—and perhaps on the response of others as well."  *Lujan*, 504 U.S. at 562 (internal quotation marks omitted).  With respect to traceability, like an individual plaintiff, an organizational plaintiff "must demonstrate a causal nexus between the defendant's conduct and [plaintiff's] injury." *Rothstein*, 708 F.3d at 91 (internal quotation marks omitted); *see Heldman on Behalf of T.H. v. Sobol*, 962 F.2d 148, 156 (2d Cir. 1992) (elaborating on this requirement); *see also New York Civil Liberties Union v. New York City Transit Authority*, 684 F.3d 286, 294 (2d Cir. 2012) (describing standing requirements for organizational plaintiff and individual plaintiff).  Plaintiff's amended complaint does not contain allegations sufficient to trace any harm to PEN American as an organization to challenged actions taken by defendant. The alleged retaliatory actions identified in plaintiff's complaint all target non-parties who, with the exception of Acosta, are not identified as members of plaintiff or as having any particular

connection to plaintiff.  Moreover, plaintiff has failed to identify any particular non-party from whom plaintiff allegedly receives information who has altered its speech in a manner traceable to defendant's actions.  Plaintiff has failed to establish any nexus between itself as an organization and defendant's alleged retaliatory actions.

With respect to redressability, plaintiff has failed to allege that any injuries to itself as an organization would be redressed by the relief it seeks in the present case.  Plaintiff must establish that "it is likely, as opposed to merely speculative, that [its] injury will be redressed by a favorable decision."  *Laidlaw*, 528 U.S. at 181.  But the actions plaintiff requests this Court to declare unlawful or enjoin did not concern plaintiff as an organization, and plaintiff has not alleged how any requested relief would redress its alleged injuries.  Plaintiff has not alleged that, were it to prevail in this case, it would spend fewer resources to monitor defendant's Administration—after all, "monitor[ing] the government's interactions with writers and journalists and produc[ing] informational content related to its advocacy work" constitutes plaintiff's established activities.  AC ¶ 24; *see id.* ¶¶ 102–11.  Similarly, although plaintiff has alleged that it receives information from non-parties allegedly targeted by defendant, it has not alleged how any particular non-party has reduced or changed its coverage of defendant or his administration.  In the absence of such allegations, plaintiff cannot establish a likelihood that relief in this case would affect its receipt of information.  *See Lujan*, 504 U.S. at 562 (explaining how redressability "hinge[s]" on the response of non-parties when plaintiff is challenging governmental action against non-party).  Moreover, any injunction sought by plaintiff would need to "state its terms specifically; and describe in reasonable detail . . . the . . . acts restrained or required."  Fed. R. Civ. P. 65(d)(1)(B)-(C).  Plaintiff's amended complaint cannot support the entry of an injunction that complies with Rule 65 and is likely to redress any injury to plaintiff as

an organization because plaintiff's allegations do not explain how plaintiff as an organization was affected by particular actions taken by defendant.  In sum, plaintiff cannot establish any of the elements of organizational standing and therefore cannot bring claims on its own behalf.

### B.  The Court Lacks Jurisdiction to Grant Declaratory or Injunctive Relief Against the President in This Context

Plaintiff's amended complaint should also be dismissed because this Court lacks jurisdiction to enter the relief sought by plaintiff against the President.  The Supreme Court has repeatedly held that, in general, the federal courts may not enter injunctive relief against the President in the context of his official, non-ministerial, duties.  In *Mississippi v. Johnson*, 71 U.S. 475 (1866), the State of Mississippi sued to prevent President Andrew Johnson from enforcing the post-Civil War Reconstruction Acts.  *Id.* at 497–98.  The Supreme Court held that no injunction could lie against the President except possibly when a plaintiff seeks to compel or restrain a ministerial act: "one in respect to which nothing is left to discretion."  *Id.* at 498–99. More recently, in *Franklin v. Massachusetts*, 505 U.S. 788 (1992), a district court entered injunctive relief directing the President to recalculate the number of Representatives apportioned on the basis of the 1990 Census and to transmit the new calculation to Congress.  *Id.* at 791.  In reversing the district court's order, a plurality[6] of the Supreme Court explained that, although the "[Supreme Court has] left open the question whether the President might be subject to a judicial injunction requiring the performance of a purely ministerial duty[,] . . . in general [the Supreme Court] has no jurisdiction of a bill to enjoin the President in the performance of his official duties."  *Id.* at 802–03 (citations and quotation marks omitted); *see also id.* at 802 ("[T]he

---

[6] Justice Scalia agreed with the four Justices of the *Franklin* plurality that the courts could not enter injunctive relief against the President in the context of the performance of his official duties.  But in Justice Scalia's view, this result—and his conclusion that declaratory relief also did not lie against the President—disposed of the entire case.  *See id.* at 824–29.

District Court's grant of injunctive relief against the President himself is extraordinary, and should have raised judicial eyebrows."). The separation of powers principles that prevent the federal courts from enjoining the President's official acts also prevent them from entering declaratory relief against the President:

> Permitting declaratory or injunctive relief against the President personally would not only distract him from his constitutional responsibility to "take Care that the Laws be faithfully executed," but, as more and more disgruntled plaintiffs add his name to their complaints, would produce needless head-on confrontations between district judges and the Chief Executive.

*Id.* at 828 (Scalia, J., concurring) (quoting U.S. Const., Art. II, § 3).

The general rule of *Mississippi* and *Franklin* applies to the present case. Plaintiff does not seek to enjoin or declare unlawful defendant's ministerial acts—acts where nothing is left to discretion. Instead, plaintiff's requested relief concerns a broad category of actions that expressly includes "official action[s]" and that would extend beyond purely ministerial duties. *See* AC Prayer for Relief. For example, as plaintiff has framed its case, if defendant decided to cancel a press conference aboard Air Force One and exclude journalists from the plane because he anticipated negative coverage and did not want to speak about a difficult topic, he would be in violation of this Court's order: he would have used the power of the federal government "to . . . constrain[] speech critical of his Administration." *Id.* The Constitution's separation of powers allows the Executive to make such decisions about his interactions with the press without judicial interference.

This Court's recent decision in *Knight First Amendment Institute at Columbia University v. Trump*, 302 F. Supp. 3d 541 (S.D.N.Y. 2018), is not to the contrary. In dicta,[7] the *Knight*

---

[7] In *Knight*, the Court did not ultimately enter any injunctive relief and instead entered declaratory relief. *Knight*, 302 F. Supp. 3d at 579.

21

Court applied a balancing test to conclude that an injunction directing the specific, ministerial act of "unblocking" individual plaintiffs on Twitter, a social media website, was within the Court's jurisdiction. *Knight*, 302 F. Supp. 3d at 577–79.  By contrast, plaintiff in the present case seeks an open-ended injunction that would declare unlawful an indeterminate category of actions, including official, discretionary actions.  As such, the injunction sought by plaintiff would be "extraordinary" and is beyond this Court's jurisdiction.  *Franklin*, 505 U.S. at 802.

## II.   PLAINTIFF'S COMPLAINT FAILS TO STATE A PLAUSIBLE CLAIM UPON WHICH RELIEF CAN BE GRANTED

### A.  Legal Standards

On a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), the Court assumes the truth of all facts asserted in the complaint and draws all reasonable inferences from those facts in favor of the plaintiff.  *See Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 154 (2d Cir. 2006).  To survive, "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  For a claim to be plausible, a complainant's "[f]actual allegations must be enough to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.

### B.  Plaintiff Fails to State a Plausible Claim for Relief for Violations of the First Amendment

Plaintiff's complaint should be dismissed even if plaintiff could overcome jurisdictional impediments.  Although plaintiff styles its claims as three separate claims of violations of the First Amendment, all three counts challenge defendant's allegedly retaliatory actions.  *See* Compl. ¶¶ 115–36.  In addition, plaintiff has not alleged that any action taken or threatened by defendant is unlawful, apart from alleged retaliatory taint.  Plaintiff's claims are thus properly understood as First Amendment retaliation claims.  *See Greenwich Citizens Comm., Inc. v.*

*Cntys. of Warren and Wash. Indus. Dev. Agency*, 77 F.3d 26, 31–32 (2d Cir. 1996) (explicating "crucial distinction between retaliatory First Amendment claims and affirmative First Amendment claims (e.g., facial challenges to statutes, challenges to prior restraints)").

Plaintiff has failed to plausibly allege the elements of a First Amendment retaliation claim.  "To plead a First Amendment retaliation claim a plaintiff must show: (1) he has a right protected by the First Amendment; (2) the defendant's actions were motivated or substantially caused by [plaintiff's] exercise of that right; and (3) the defendant's actions caused him some injury."  *Smith v. Campbell*, 782 F.3d 93, 100 (2d Cir. 2015) (internal quotation marks omitted) (alteration in original) (quoting *Dorsett v. County of Nassau*, 732 F.3d 157, 160 (2d Cir. 2013) (per curiam)).  Even assuming that plaintiff may raise claims on behalf of its members—which it lacks standing to do, *see supra*—plaintiff has failed to adequately plead the second or third elements of any First Amendment retaliation claim.

With respect to the second element of a First Amendment retaliation claim, plaintiff has failed to plausibly allege that its speech or the speech of any of its members, except for Acosta, motivated defendant to take any action.  Plaintiff's amended complaint is devoid of allegations that defendant knew of or took any action in response to plaintiff's own speech.  *See generally* AC.  Although plaintiff does allege that some of its members work at or with organizations whose speech allegedly motivated defendant to take actions, *see* AC ¶ 25, plaintiff's amended complaint does not describe any of its members' speech in sufficient detail to adequately allege that any particular member's speech motivated defendant to take any action (except for Acosta).[8] Plaintiff's allegations that non-parties' speech motivated defendant to take certain actions are

---

[8] There is no authority for the proposition that the speech of a news organization can be ascribed to its employees or partners when neither those employees or partners nor their roles in connection with the organization have been identified.

23

irrelevant to plaintiff's claims: it cannot raise claims on behalf of non-member non-parties, such as Jeff Bezos or NBC.  *See Farrell*, 449 F.3d at 494.  Plaintiff's amended complaint omits the second element of a First Amendment retaliation claim.

With respect to the third element of a First Amendment retaliation claim, plaintiff has failed to allege that Defendant's actions caused it or its members any injury that could form the basis of a First Amendment retaliation claim.  The Second Circuit has explained that a plaintiff has adequately alleged injury for purposes of a First Amendment retaliation claim "if he can show *either* that his speech has been adversely affected by the government retaliation or that he has suffered some other concrete harm."  *Dorsett*, 732 F.3d at 160.  Plaintiff has not adequately alleged injury under either prong.

First, Plaintiff has not alleged that its speech has been adversely affected by defendant's actions. On the contrary, plaintiff has alleged that its speech about defendant has increased.  *See, e.g.*, AC ¶ 111.  And while plaintiff alleges in conclusory terms that its members' speech has been adversely affected, its allegations do not "nudge[] [its] claims across the line from conceivable to plausible."  *Twombly*, 550 U.S. at 570.  Plaintiff's amended complaint does not allege that (or how) any particular member's speech has been chilled, nor does it allow an inference that defendant's actions caused any such chilling.  Instead, plaintiff's amended complaint reports generalized survey results of its members' "belie[f] [that] public criticism of the current Administration *might* put them at risk" and of adverse consequences to plaintiff's members arising from employment decisions made by non-parties or from members' "concern about personal or professional repercussions."  AC ¶ 96 (emphasis added).[9]  Such allegations are

---

[9] Plaintiff alleges that "[its] members plan to produce in the future, work . . . that is often critical of . . . President [Trump] and his Administration," further undermining plaintiff's equivocal allegations of chilling.  AC ¶ 27.

insufficient to establish the necessary causation and injury components of a First Amendment retaliation claim.

Second, plaintiff's amended complaint contains no plausible allegations of other concrete harms suffered by plaintiff or its members.  In *Dorsett*, the Second Circuit listed examples of concrete harms, such as the loss of a government contract, additional security at a border crossing, revocation of a building permit, and a refusal to enforce zoning laws.  *See Dorsett*, 732 F.3d at 160 (collecting cases).  Plaintiff's choice to allocate more resources to its existing domestic operations is not a comparably concrete harm.  Instead, it is "a choice about where and how to allocate its resources . . . that almost all organizations with finite resources have to make."  *CREW*, 276 F. Supp. 3d at 191.  In addition, plaintiff has not plausibly alleged that its or its members' receipt of information has been impaired because it has failed to allege that any particular source of information has actually been chilled. *See, e.g.*, AC ¶¶ 99–101 (alleging that defendant's actions "are designed to unduly influence" the news but not that defendant's actions have been effective); *id.* ¶¶ 112–14 (describing how defendant has "attempted" to "hamper" or "dampen" the news but not that he has done so).  Otherwise, plaintiff has not alleged any harms suffered by it or its members.  Plaintiff has therefore failed to adequately allege causation or injury for purposes of a First Amendment retaliation claim, and its complaint should be dismissed for failure to plausibly state a claim upon which relief can be granted.

## **CONCLUSION**

For the foregoing reasons, the Court should dismiss plaintiff's amended complaint.


Dated:   New York, New York
         April 10, 2019

Respectfully submitted,

GEOFFREY S. BERMAN
United States Attorney for the
Southern District of New York,
*Attorney for Defendant*

By:   /s/ Steven J. Kochevar
Steven J. Kochevar
Assistant United States Attorney
86 Chambers Street, Third Floor
New York, New York 10007
Tel.    (212) 637-2715
Fax     (212) 637-2717
steven.kochevar@usdoj.gov