UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PEN AMERICAN CENTER, INC., <br><br>                    Plaintiff, <br><br> - against - <br><br> DONALD J. TRUMP, in his official capacity as President of the United States, <br><br>                    Defendant. | No. 18 Civ. 9433 (LGS) |

**DEFENDANT'S REPLY MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION
TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

GEOFFREY S. BERMAN
United States Attorney for the
Southern District of New York
86 Chambers Street, Third Floor
New York, New York 10007
Tel:    (212) 637-2715
*Attorney for Defendant*

Steven J. Kochevar
*Assistant United States Attorney*
        – Of Counsel –

## **TABLE OF CONTENTS**

ARGUMENT ...................................................................................................................................1

    I.      PLAINTIFF LACKS ASSOCIATIONAL STANDING TO BRING
           CLAIMS ON BEHALF OF ITS MEMBERS .........................................................1

          A.     Plaintiff Has Not Established That Any of its Members Has
          Standing ........................................................................................................1

          B.     Plaintiff Must Name a Member With Standing ............................................3

          C.     Plaintiff's Claims Require the Participation of Individual Members ..........4

    II.     PLAINTIFF LACKS ORGANIZATIONAL STANDING TO BRING
          CLAIMS ON ITS OWN BEHALF ..........................................................................4

    III.    THE COURT LACKS AUTHORITY TO ENTER PLAINTIFF'S
          REQUESTED RELIEF AGAINST THE PRESIDENT ..........................................7

    IV.    PLAINTIFF'S COMPLAINT FAILS TO STATE A PLAUSIBLE
          CLAIM FOR RELIEF .............................................................................................9

CONCLUSION ..............................................................................................................................10

# **TABLE OF AUTHORITIES**

**Cases** Page(s)

*Am. Acad. of Religion v. Napolitano*,
  573 F.3d 115 (2d Cir. 2009) ................................................................................................ 6

*Avillan v. Donahoe*,
  483 Fed. Appx. 637 (2d Cir. 2012) ..................................................................................... 4

*Bano v. Union Carbide Corp.*,
  361 F.3d 696 (2d Cir. 2004) ................................................................................................ 4

*Blumenthal v. Trump*,
  No. 17-1154, 2019 WL 1923398 (D.D.C. April 30, 2019) .................................................. 9

*Building and Const. Trade Council of Buffalo, New York and Vicinity v. Downtown Development*,
  448 F.3d 138 (2d Cir. 2006) ................................................................................................ 3

*Campbell v. Louisiana*,
  523 U.S. 392 (1998) ............................................................................................................ 1

*Clapper v. Amnesty Int'l USA*,
  568 U.S. 398 (2013) ............................................................................................................ 2

*Clinton v. New York*,
  524 U.S. 417 (1998) ............................................................................................................ 8

*Common Cause/N.Y. v. Brehm*,
  344 F. Supp. 3d 542 (S.D.N.Y. 2018) ................................................................................. 3

*Conn. Bar Ass'n v. United States*,
  620 F.3d 81 (2d Cir. 2010) .................................................................................................. 6

*Citizens for Responsibility and Ethics in Washington v. Trump*,
  276 F. Supp. 3d 174 (S.D.N.Y. 2017) ................................................................................. 5

*D.C. v. Trump*,
  291 F. Supp. 3d 725, (D.D.C. 2018) ................................................................................... 9

*Dow Jones & Co.*,
  842 F.2d 603 (2d Cir. 1988) ................................................................................................ 6

*Franklin v. Massachusetts*,
  505 U.S. 788 (1992) ............................................................................................................ 8

*Laird v. Tatum*,
  408 U.S. 1 (1972) ................................................................................................................ 2

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992) ................................................................................................... 3, 5, 6

*Marcavage v. City of New York*,
  689 F.3d 98 (2d Cir. 2012) .................................................................................................. 3

*Mississippi v. Johnson*,
  4 Wall. 475 (1867) .............................................................................................................. 8

*New York Civil Liberties Union v. NYC Trans. Auth.*,
  684 F.3d 286 (2d Cir. 2012) ................................................................................................ 6

*New York v. U.S. Dep't of Commerce*,
  351 F. Supp. 3d 502 (S.D.N.Y. 2019) ................................................................................. 3

*Roche Diagnostic GmbH v. Enzo Biochem.*,
　992 F. Supp. 2d 213 (S.D.N.Y. 2013) .................................................................................... 4
*Saget v. Trump*,
　No. 18-cv-1599, 2019 WL 1568755 (E.D.N.Y. April 11, 2019) ............................................. 9
*Summers v. Earth Island Institute*,
　555 U.S. 488 (2009) ................................................................................................................ 3
*Washington v. Trump*,
　276 F. Supp. 3d 174 (S.D.N.Y. 2017) ..................................................................................... 5
*Nat. Res. Def. Council v. Wheeler*,
　No. 18-cv-613, 2019 WL 1299938 (March 21, 2019) ............................................................ 3
*Wright v. Ernst & Young LLP*,
　152 F.3d 169 (2d Cir. 1998) .................................................................................................... 4

The Court should grant defendant's motion to dismiss because plaintiff's opposition brief does not adequately address the defects in its amended complaint. Instead, plaintiff frames its claims as challenging a "scheme . . . intend[ed] to chill the speech of all journalists." Memorandum of Law in Opposition to Defendant's Motion to Dismiss ("P.'s Opp."), at 10, ECF No. 48. This framing shows why plaintiff's lawsuit cannot proceed: plaintiff cannot assert claims on behalf of the press as a diffuse entity because Article III requires a discrete case or controversy for this Court to have jurisdiction, and the First Amendment requires more particular allegations for judicial relief to be plausible. To the extent the scheme alleged by plaintiff calls for a remedy, the Constitution provides it through the ballot box, not this Court. *See* U.S Const., art. II, § 1 (providing for the election of the President).

## ARGUMENT

### I. Plaintiff Lacks Associational Standing to Bring Claims On Behalf of Its Members

As explained in defendant's opening brief, plaintiff lacks standing to bring claims on behalf of any its members—or any non-member allegedly targeted by defendant.[1] *See* Defendant's Memorandum of Law in Support of His Motion to Dismiss Plaintiff's Amended Complaint ("Def.'s MOL") at 5–13, ECF No. 46. The arguments in plaintiff's opposition brief fail to establish associational standing here.

### A. Plaintiff Has Not Established That Any of its Members Has Standing

Plaintiff has failed to establish that any of its members would have standing on his or her

---

[1] Contrary to amici's argument, none of the elements of *jus tertii* standing are present here, for the reasons stated in defendant's opening brief and in this brief, and for the additional reason that plaintiff has not alleged any "hindrance" to a third party filing suit—indeed, some third parties have filed suit. *See Campbell v. Louisiana*, 523 U.S. 392, 397 (1998) (setting out third-party standing elements); *see, e.g., CNN v. Trump*, No. 18-cv-2610 (TJK) (D.D.C.).

1

own. In arguing otherwise, plaintiff falls back on the generalized allegations in its amended complaint that defendant's statements and threatened actions have cowed the press. P.'s Opp. at 12–14. But Article III requires more than that. For this Court to have jurisdiction over plaintiff's claims, plaintiff needs to describe how some member will suffer a concrete, particularized, and certainly impending future injury—not a subjective fear of retaliation. *See* Def.'s MOL at 5, 8–11.[2] Moreover, any such injury would have to be causally linked to the President's actions, but plaintiff have not alleged how any of its member's alleged circumstances are traceable to any particular action by the President, instead of, for example, the editorial decisions of an employer or the subjective fears of the member . *See, e.g.*, Amended Complaint ("AC") ¶ 96, ECF No. 38. Relatedly, because plaintiff has not alleged that any of defendant's actions are actually and currently harming its members, it has not established that this Court could redress any injuries through injunctive relief. *See* Def.'s MOL at 12–13. To the extent plaintiff's allegations address the requirements of standing at all, they concern non-member non-parties, like Amazon.com or CNN. If those entities have cognizable injuries that could establish standing, they may bring suit on their own—and, indeed, have done so. *See, e.g.*, *CNN v. Trump*, No. 18-cv-2610 (TJK) (D.D.C.). Plaintiff has failed to show that any of its own members have standing to bring these claims.

---

[2] Although plaintiff correctly points out that the facts of *Laird v. Tatum*, 408 U.S. 1 (1972), and *Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013), concerned government surveillance programs, P.'s Opp. at 13–14, that does not mean that their holdings do not apply here. Indeed, plaintiff acknowledges that standing was absent in these cases because only a "'speculative chain of possibilities' connect[ed] the challenged [actions] with some ultimate harm to plaintiff's speech." P.'s Opp. at 14 (quoting *Clapper*, 568 U.S. at 410, 414). That precisely describes the present case as well: plaintiffs have not alleged—or identified in their opposition brief—any particular action taken by the President that creates a "present objective harm or a threat of specific future harm" to any particular member. *Laird*, 408 U.S. at 14.

### B. Plaintiff Must Name a Member With Standing

Relatedly, plaintiff lacks associational standing because it has failed to identify by name at least one member with standing.[3] The Supreme Court has clearly held that an organization asserting associational standing must identify, by name, at least one member with standing:

> our prior cases . . . have required plaintiff-organizations to make specific allegations establishing that at least one identified member had suffered or would suffer harm. . . . This requirement of naming the affected members has never been dispensed with in light of statistical probabilities, but only where *all* the members of the organization are affected by the challenged activity.

*Summers v. Earth Island Institute*, 555 U.S. 488, 498–99 (2009). Plaintiff's argument that this requirement does not apply at the pleading stage, P.'s Opp. at 14, overlooks the language of *Summers* "requir[ing] . . . specific *allegations*," 555 U.S. at 498 (emphasis added).[4] The Supreme Court has been clear about the requirements of standing at each stage of a litigation and would not have used the word "allegations" in *Summers* unless the naming requirement applied at the pleading stage. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (explaining how

---

[3] Jim Acosta lacks standing because his press pass was restored, AC ¶ 44, and he does not face "a certainly impending future injury." *Marcavage v. City of New York*, 689 F.3d 98, 103 (2d Cir. 2012). Contrary to plaintiff's opposition briefing, P.'s Opp. at 15, plaintiff's allegations concerning the rules governing White House press conferences do not establish that Acosta is likely to be deprived of his pass for retaliatory reasons in the future. *See* AC ¶¶ 45–48.

[4] As a later, binding Supreme Court decision, *Summers* displaced *Building and Const. Trade Council of Buffalo, New York and Vicinity v. Downtown Development*, 448 F.3d 138, 144–45 (2d Cir. 2006). Defendant respectfully disagrees with the recent decisions of this Court cited by plaintiff, to the extent they depart from *Summers*. *See* P.'s Opp. at 14–15 n.3. However, it does not appear that the cases cited by plaintiff depart from *Summers*, except possibly in dicta. In *New York v. U.S. Dep't of Commerce*, 351 F. Supp. 3d 502 (S.D.N.Y. 2019), several organizational plaintiffs did name specific members. *Id.* at 605. In *Common Cause/N.Y. v. Brehm*, 344 F. Supp. 3d 542 (S.D.N.Y. 2018), the Court expressly did not reach the parties' associational standing arguments, *id.* at 549, and only considered the plaintiff's failure to identify specific individuals in the context of a 12(b)(6) challenge for failure to state a claim, *id.* at 560. In *Nat. Res. Def. Council v. Wheeler*, No. 18-cv-613, 2019 WL 1299938 (S.D.N.Y. March 21, 2019), the Court granted the Government's motion to dismiss for lack of standing.

3

"each element" of standing must be supported at stages of litigation, namely with "allegations" at the pleading stage, "affidavit[s] or other evidence" at the summary judgement stage, and adequate evidence at trial). Plaintiff need not produce affidavits or carry an evidentiary burden at this stage, but it must allege, by name, a specific member with standing—and has not done so.[5]

### C. Plaintiff's Claims Require the Participation of Individual Members

Plaintiff lacks associational standing because its claims require the participation of individual members. Plaintiff does not respond to defendant's opening arguments on this point, *see* Def.'s MOL at 13, and instead contends that individual participation is not necessary when a plaintiff seeks injunctive relief, P.'s Opp. at 17. The Second Circuit has held to the contrary that

> an association [does not] automatically satisf[y] the third prong of the *Hunt* test simply by requesting equitable relief rather than damages. The organization lacks standing to assert claims of injunctive relief on behalf of its members where the fact and extent of the injury that gives rise to the claims for injunctive relief would require individualized proof.

*Bano v. Union Carbide Corp.*, 361 F.3d 696, 714 (2d Cir. 2004) (quotation marks omitted).

### II.   Plaintiff Lacks Organizational Standing to Bring Claims On Its Own Behalf

Plaintiff lacks organizational standing because it voluntarily chose to increase expenditures on its general press advocacy activities in response to defendant's election.

---

[5] Notwithstanding its insistence that the *Summers* naming requirement does not apply, plaintiff identifies Dana Milbank as a PEN American member for the first time in its opposition brief and suggests that he has standing. *See* P.'s Opp. at 4–5, 16. "It is well settled that a party may not amend its pleadings in its briefing papers." *Roche Diagnostic GmbH v. Enzo Biochem.*, 992 F. Supp. 2d 213, 219 (S.D.N.Y. 2013); *see Avillan v. Donahoe*, 483 Fed. Appx. 637, 639 (2d Cir. 2012) (Summ. Order) (citing *Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998)). Thus, any allegations concerning Milbank are not properly before the Court because they do not appear in plaintiff's amended complaint. In any event, dismissal would still be appropriate were the Court to take plaintiff's statements about Milbank into account because it does not appear that Milbank has standing—the article cited by plaintiff itself explains that he was still offered White House access—or that any actions taken with respect to his press pass could state a plausible claim for relief under the First Amendment. *See* P.'s Opp. at 5 (citing Dana Milbank, *The White House Has Revoked My Press Pass*, Wash. Post, May 9, 2019, at A19).

Plaintiff's bare allegations that it was "forced" to divert more resources toward its U.S.-based advocacy, AC ¶¶ 104, 111, do not establish constitutional injury because plaintiff has not explained how it suffered an impairment distinguishing it from the public at large. *See Lujan*, 504 U.S. at 573–74. Specifically—and in contrast to the cases cited by plaintiff and amici on this point—plaintiff has not alleged any particular coercive or obtrusive effect on its operations, such as expenditures tailored in some way to challenged actions. Instead, plaintiff asserts injury based on its general press advocacy efforts. *See* Compl. ¶¶ 104–11. But with such general efforts as its asserted injury, the relief sought here would "no more directly and tangibly benefit[] [plaintiff] than . . . the public at large." *Lujan*, 504 U.S. at 574. Indeed, if any person or organization could establish standing based on efforts expended to criticize or monitor the President's interactions with the press, the standing requirement would effectively no longer exist. *See id.* at 576 ("generalized interest of all citizens in constitutional governance" does not support standing).

Contrary to plaintiff's argument, *Citizens for Responsibility and Ethics in Washington v. Trump*, 276 F. Supp. 3d 174 (S.D.N.Y. 2017) ("*CREW*"), shows why plaintiff has not adequately alleged injury here because defendant's conduct "has caused no legally cognizable adverse consequences, tangible or otherwise, necessitating the expenditure of organizational resources." *Id.* at 190–91. Although plaintiff states this is not so, it does not identify any reason it was required to expend resources. P.'s Opp. at 21. Plaintiff is correct that many of the costs alleged in *CREW* were litigation expenses, but *CREW*'s reasoning still applies. *CREW*'s lesson is that an organization cannot create standing by voluntarily choosing to allocate resources to a project when not forced in some specific way to do so. *See CREW*, 276 F. Supp. at 191; Def.'s MOL at 17. Moreover, under *Lujan*, a plaintiff, such as CREW or plaintiff here, with a broad mission to ensure that "the Government be administered according to law" cannot create standing based on

5

such general public interests, no matter what resources it diverts to that mission. 504 U.S. at 574.

Plaintiff has also failed to adequately allege injury based on its receipt of information. Plaintiff has never alleged that any speaker's speech has actually been chilled or explained what information plaintiff has not received. *See, e.g.*, AC ¶¶ 113, 114 (alleging "attempt[s] to dampen the content or tenor of the news" but no actual chilling). The cases cited by plaintiff on this point offer concrete instances of restrictions on a willing speaker's speech or a recipient's access to information, such as a gag order restraining criminal trial participants from speaking with the press, *see Application of Dow Jones & Co.*, 842 F.2d 603, 604 (2d Cir. 1988); statutory restrictions which, *inter alia*, limited debt relief agencies from giving certain advice, *see Conn. Bar Ass'n v. United States*, 620 F.3d 81, 86 (2d Cir. 2010); the denial of a foreign speaker's visa, *see Am. Acad. of Religion v. Napolitano*, 573 F.3d 115, 120 (2d Cir. 2009); or the exclusion of the public from administrative proceedings, *see New York Civil Liberties Union v. NYC Trans. Auth.*, 684 F.3d 286, 292 (2d Cir. 2012). *See* P.'s Opp. at 19. Plaintiff has not alleged any comparable, concrete restrictions on a willing speaker's speech or its access to information in the present case.

Plaintiff has also failed to establish the traceability element of organizational standing. In its opposition brief, plaintiff repeats the conclusory statement that it "would not have diverted resources absent Defendant's constitutional violations," P.'s Opp. at 21, but its own complaint belies this assertion: three of the five specific initiatives allegedly undertaken by plaintiff were launched before (or on the day) defendant became the President. *See* AC ¶ 111 (alleging daily newsletter launched in November 2016, a protest held on January 15, 2017, and launch of "Trump the Truth Timeline" on January 20, 2017); ¶ 28 (acknowledging defendant's Presidency began on January 20, 2017); *see also* AC ¶ 105 (alleging plaintiff's Board of Directors concluded

6

"[i]mmediately following the 2016 election" that journalists would be targeted based on defendant's statements as a candidate, not based on his actions as President). Defendant could not have unconstitutionally retaliated against plaintiff—or anyone else—before he became the President. Thus, plaintiff's own allegations demonstrate that its alleged increased expenditures are the product of its political disagreements with the President—not any alleged retaliatory action on defendant's part. More broadly, defendant's alleged actions do not concern plaintiff at all, and so any alleged alterations in plaintiff's activities are not traceable to defendant's actions.[6]

Plaintiff has also failed to establish the redressability element necessary to organizational standing. Plaintiff does not engage with defendant's opening arguments on this point. *See* P.'s Opp. at 21 (directing the Court to the arguments in the following section of its brief). Specifically, plaintiff has not offered any allegation or explanation establishing that it would discontinue its increased operations—its alleged organizational injury[7]—were it to receive the relief it seeks in this case. On the contrary, plaintiff's complaint alleges that its increased expenditures began before defendant became the President, and offers no basis on which to conclude that plaintiff would reduce its domestic operations were it to prevail. *See* AC ¶ 111.

### III. The Court Lacks Authority to Enter Plaintiff's Requested Relief Against the President

This Court lacks jurisdiction to enjoin or declare unlawful discretionary actions by a sitting President of the United States, based solely on his motivations for taking otherwise lawful

---

[6] Plaintiff has also failed to establish that any effect on its receipt of information is traceable to defendant's actions because plaintiff has not identified any particular source whose speech has been chilled, rendering it impossible to trace any chilling back to a cause.

[7] The only other injury plaintiff asserts concerns its receipt of information, but it would be speculative to conclude that the relief sought in this case would lead any (unidentified) speaker to increase or alter its speech, particularly because plaintiff has not alleged that any speaker has reduced its speech in the first place.

actions. In *Franklin v. Massachusetts*, 505 U.S. 788 (1992), five justices[8] of the Supreme Court reaffirmed that "in general 'this court has no jurisdiction of a bill to enjoin the President in the performance of his official duties.'" *Id.* at 802–03 (quoting *Mississippi v. Johnson*, 4 Wall. 475, 501 (1867)). Justice O'Connor acknowledged that the Court had "left open the question whether the President might be subject to a judicial injunction requiring the performance of a purely 'ministerial' duty," *id.* at 802, meaning "one in respect to which nothing is left to discretion," *Mississippi*, 4 Wall. at 498.[9] As discussed in defendant's opening brief, Def.'s MOL at 21, plaintiff seeks to enjoin or declare unlawful official, discretionary actions that are therefore non-ministerial. Plaintiff does not meaningfully contest this characterization of the actions that would fall within the scope of the relief sought in this case. *See* P.'s Opp. at 21–24. Although plaintiff's opposition brief states that defendant "has not identified which of his Presidential duties would be impaired," P.'s Opp. at 23 (brackets omitted), defendant did identify duties that would be impaired in his opening brief. Specifically, defendant offered the hypothetical of the President canceling a press conference aboard Air Force One and excluding journalists from the plane because he anticipated negative coverage. *See* Def.'s MOL at 21. These sorts of actions would fall within the scope of relief sought by plaintiff here, but the Constitution's separation of powers allows the Executive to make such decisions about his interactions with the press when discharging his official duties without judicial interference. *See id.* Plaintiff offers no response.

---

[8] Although Justice Scalia did not join the Part of Justice O'Connor's opinion addressing the power of the federal courts to enter relief against the President, thereby rendering that Part a four-justice plurality opinion, he agreed with its conclusions and indeed would have held that they disposed of the case entirely. *See Franklin*, 505 U.S. at 823–29 (Scalia, J., concurring).

[9] As Justice Scalia explained in his *Franklin* concurrence, the reasons the Court cannot enjoin the President also apply to declaratory relief. *See Franklin*, 505 U.S. at 827–28 (Scalia, J., concurring). *Clinton v. New York*, 524 U.S. 417 (1998) is not to the contrary: it concerned the constitutionality of a statute, the Line Item Veto Act.

8

Instead, plaintiff relies on a series of recent district court decisions concluding that the federal courts may enter injunctive or declaratory relief requiring or forbidding the President to take specific actions required by law or forbidden by law. *See* P.'s Opp. at 22–24; *see, e.g.*, *Saget v. Trump*, No. 18-cv-1599, 2019 WL 1568755 (E.D.N.Y. April 11, 2019) (enjoining termination of Haiti's Temporary Protected Status designation); *Blumenthal v. Trump*, No. 17-1154, 2019 WL 1923398 (D.D.C. April 30, 2019) (contemplating relief under Emoluments Clause); *D.C. v. Trump*, 291 F. Supp. 3d 725 (D. Md. 2018), *mandamus filed*, No. 18-2488 (4th Cir.) (same). But in the present case, plaintiff has not alleged that defendant's actions were unlawful, apart from alleged retaliatory taint. In addition, the relief sought by plaintiff here is not fitted to a specific action or set of actions—the relief sought by plaintiff could potentially affect every official action taken by the President, on the theory that his motivations for any official action might be tainted. The relief sought by plaintiff here therefore concerns the category of discretionary, non-ministerial actions that are beyond the jurisdiction of this Court to declare unlawful or enjoin.

## IV. Plaintiff's Complaint Fails to State a Plausible Claim for Relief

Even if plaintiff were to overcome jurisdictional barriers, its complaint should still be dismissed under Fed. R. Civ. P. 12(b)(6) because plaintiff's allegations fail to establish a plausible claim for relief under the First Amendment for itself or its members. *See* Def.'s MOL at 22–25. Plaintiff does not meaningfully contest this point in its opposition brief and instead argues that it has challenged defendant's "scheme . . . intend[ed] to chill the speech of all journalists." P.'s Opp. at 10. This approach fails for two reasons. First, assuming *arguendo* that plaintiff has both associational and organizational standing—it has neither, *see supra*—it would still only be able to raise claims on its own behalf and on behalf of its members, not on behalf of the press as a diffuse entity. Thus, to survive a 12(b)(6) motion, plaintiff would have had to adequately allege that PEN American or its members have been the target of unlawful censorship

9

or retaliatory action. It has not done so. Plaintiff has not alleged that defendant is likely to take any action implicitly or explicitly coercing the speech of PEN American or any of its members. Instead, to the extent defendant's alleged actions can be construed as threats against speech, they are directed at non-party non-members like "Time Warner (and CNN), Google, Facebook, and *The Washington Post* (via Amazon.com)." P.'s Opp. at 8. Similarly, plaintiff has not established the necessary motivation or injury elements of a First Amendment retaliation claim for itself or its members. *See* Def.'s MOL at 22–25.

Second, plaintiff's allegations of a scheme against all journalists do not state a plausible claim for relief. Plaintiff's invocation of such a scheme appears premised upon the belief that a government official's criticism of the media itself amounts to a First Amendment violation. *See, e.g.*, P.'s Opp. at 8, 10 (citing AC ¶ 36); AC ¶ 36 (alleging critical post on Twitter.com). That is not the law: criticism does not, by itself, violate the First Amendment. Courts have recognized—and, indeed, expect—that public officials will respond to negative coverage. *See Zherka v. Amicone*, 634 F.3d 642, 646–47 (2d Cir. 2011); *see also Gertz v. Robert Welch*, 418 U.S. 323, 344 (1974) (describing capacity of public officials to respond in the defamation context). As the Second Circuit has explained, "[r]etaliatory insults or accusations may wound one's soul, but by themselves they fail to cross the threshold of measurable harm required to move government response to public complaint from the forum of free speech into federal court." *Zherka*, 634 F.3d at 646; *see id.* at 646–47 & n.9 (rejecting "person of ordinary firmness" standard and holding that "cursory" allegations of "emotional and psychological harm" did not state a plausible First Amendment retaliation claim). The Circuit observed that, were the law otherwise, "the Constitution would change from the guarantor of free speech to the silencer of public debate." *Id.*

## CONCLUSION

The Court should grant defendant's motion to dismiss plaintiff's amended complaint.

10

Dated: New York, New York
May 23, 2019

Respectfully submitted,

GEOFFREY S. BERMAN
United States Attorney for the
Southern District of New York,
*Attorney for Defendant*

By: /s/ Steven J. Kochevar
Steven J. Kochevar
Assistant United States Attorney
86 Chambers Street, Third Floor
New York, New York 10007
Tel.   (212) 637-2715
Fax   (212) 637-2717
steven.kochevar@usdoj.gov

11