**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| PEN AMERICAN CENTER, INC., )<br><br>Plaintiff, )<br><br>v. )<br><br>DONALD J. TRUMP, in his official capacity )<br>as President of the United States, )<br><br>Defendant. ) | Civil Action No. 18-cv-9433-LGS |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S
MOTION TO CERTIFY THE COURT'S MARCH 24 OPINION & ORDER FOR
INTERLOCUTORY APPEAL AND TO STAY DISCOVERY**

## **TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................... 1

ARGUMENT ...................................................................................................................... 2

    I.    DEFENDANT'S CLAIM THAT HE IS NOT SUBJECT TO THIS COURT'S AUTHORITY IS

        MERITLESS............................................................................................................. 3

    II.    DEFENDANT'S CLAIM THAT PLAINTIFF LACKS STANDING TO SUE IGNORES THE ACTUAL

        ALLEGATIONS OF THE AMENDED COMPLAINT, ON WHICH THE COURT'S MOTION TO

        DISMISS DECISION PROPERLY RESTS ..................................................................... 5

    III.   DEFENDANT IS NOT PERMITTED TO THREATEN TO OR DENY PRESS ACCESS OR TO REVOKE

        SECURITY CLEARANCES BASED ON THE CONTENT OF PROTECTED SPEECH ......................... 9

CONCLUSION.................................................................................................................. 10

i

## TABLE OF AUTHORITIES

**Cases**

*Am. Broad. Companies, Inc. v. Cuomo*, 570 F.2d 1080, 1083 (2d Cir. 1977) ................................ 9

*Backpage.com, LLC v. Dart*, 807 F.3d 229, 231 (7th Cir. 2015) .................................................. 6

*Baltimore Sun Co. v. Ehrlich*, 437 F.3d 410 (4th Cir. 2006) ....................................................... 9

*Century Pacific, Inc. v. Hilton Hotels Corp.*, 574 F. Supp. 2d 369, 371-72 (S.D.N.Y. 2008) ....... 5

*Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 416 (2013) .......................................................... 5, 7

*Clinton v. City of New York*, 524 U.S. 417 (1998) ................................................................... 3, 4

*Dillon v. Morano*, 497 F.3d 247, 254 (2d Cir. 2007) ................................................................... 8

*District of Columbia v. Trump*, 291 F. Supp. 3d 725, 751-52 (D. Md. 2018) ............................... 4

*Franklin v. Massachusetts*, 505 U.S. 788, 827-28 (1992) ......................................................... 3, 4

*Huminski v. Corsones*, 396 F.3d 53, 84 (2d Cir. 2005) ............................................................... 9

*Knight First Amendment Inst. at Columbia Univ. v. Trump*, 302 F. Supp. 3d 541, 579 (S.D.N.Y. 2018) ........................................................................................................................... 4

*Knight First Amendment Inst. at Columbia Univ. v. Trump*, 928 F.3d 226, 233–34 & n.3 (2d Cir. 2019) ........................................................................................................................... 5

*Marbury v. Madison*, 5 U.S. (1 Cranch 137), 177 (1803) ............................................................ 1

*Narragansett Elec. Co. v. American Home Assur. Co.*, 921 F. Supp. 2d 166, 196 (S.D.N.Y. 2013) ........................................................................................................................... 5

*Nat'l Asbestos Workers Med. Fund v. Philip Morris, Inc.*, 71 F. Supp. 2d 139, 162 (E.D.N.Y. 1999) ........................................................................................................................... 2

*Newdow v. Roberts*, 603 F.3d 1002, (D.C. Cir. 2010) ............................................................... 3, 4

*Nicholas v. Bratton*, 376 F. Supp. 3d 232, 259-260 (S.D.N.Y. 2019) ........................................... 9

*Okwedy v. Molinari*, 333 F.3d 339, 344 (2d Cir. 2003) ............................................................... 6

*Perry v. Sindermann*, 408 U.S. 593, 597 (1972) ........................................................................ 8

*Public Citizen v. U.S. Dep't of Justice*, 491 U.S. 440, 449–50 (1989) .......................................... 7

*Ragbir v. Homan*, 923 F.3d 53, 71 (2d Cir. 2019) ...................................................................... 7

*Saber v. New York State Dep't of Fin. Servs.*, No. 15 CIV. 5944 (LGS), 2018 WL 3491695, at *7
(S.D.N.Y. July 20, 2018) ................................................................................................ 8

*S.E.C. v. First Jersey Securities, Inc.*, 587 F. Supp. 535, 536 (S.D.N.Y. 1984) ............................ 5

*Sherrill v. Knight*, 569 F.2d 124, 130 (D.C. Cir. 1977) ................................................................ 8

*Stevens v. New York Racing Ass'n, Inc.*, 665 F. Supp. 164, 175 (E.D.N.Y. 1987) ........................ 9

*Stone v. Patchett*, No. 08 Civ. 5171, 2009 WL 1544650, at *2 (S.D.N.Y. June 3, 2009) .............. 5

*Stone v. Trump*, 400 F. Supp. 3d 317, 359 (D. Md. 2019) .............................................................. 4

*Swan v. Clinton*, 100 F.3d 973, 976 n.1 (D.C. Cir. 1996) ............................................................. 3

*WPIX, Inc., v. League of Women Voters*, 595 F. Supp. 1484, 1489 (S.D.N.Y. 1984) .................... 9

*Zherka v. Amicone*, 634 F.3d 642, 644 (2d Cir. 2011) ................................................................. 8

**Statutes**

28 U.S.C. § 1292(b) ....................................................................................................... 1, 2, 5

**INTRODUCTION**

The Court's March 24, 2020 Opinion and Order ("Order") fully addressed the arguments Defendant raised in his motion to dismiss. The Court dismissed all claims for injunctive relief and dismissed on standing grounds several claims based on Defendant's threats and retaliation against media organizations. What remains is a streamlined case seeking a declaration that Defendant violated the First Amendment when he threatened to revoke White House press access and security clearances for individual reporters and commentators because they publicly criticized him, and when he several times made good on those threats. Even as narrowed, this case is vitally important.

Defendant has brazenly and persistently used the powers of the presidency to threaten and punish reporters and media commentators for the content of their speech. His conduct violates the First Amendment, strikes at the core of our democracy, and is all the more dangerous because it is being carried out by the most powerful official in our government. Yet Defendant is seeking to delay this Court's resolution of the merits of this case on the ground that he is, in effect, above the law.

Defendant's arguments  in support of his petition for interlocutory appeal boil down to the following:  the First Amendment of the United States Constitution does not bind the President of the United States, and even if it did, the (supposedly) co-equal judicial branch of our government is prohibited from holding him to account for it. Indeed, the Defendant describes this Court's foundational duty recognized in *Marbury v. Madison*, 5 U.S. (1 Cranch 137), 177 (1803), to "say what the law is" as unwarranted  "judicial scrutiny," ECF 101 at 4, consistent with his vision of a monarchical presidency. There is no "substantial ground for difference of opinion," 28 U.S.C. § 1292(b), that this extreme and fundamentally undemocratic position is *not* the law.

1

On the contrary, and as set forth fully below, the law is clear that this Court has the authority

to issue a declaratory judgment when the President of the United States violates the laws he is

sworn to uphold; that the President cannot selectively deny reporters access to cover him and his

administration based on the content of their speech, or threaten to and actually revoke the security

clearances of former government personnel because they criticize him in the media; and that

Plaintiff—one of the nation's largest organizations of journalists whose members have been

directly targeted and impacted by the President's conduct—has standing to sue to right these

wrongs. Defendant's arguments are so far off the mark that he did not bother to raise many of them

in his motion to dismiss. He should not be allowed to further delay accountability for his egregious

actions by invoking meritless arguments he failed to develop in his earlier briefing.

The Court should quickly deny Defendant's baseless petition for interlocutory appeal and

permit this case to proceed towards resolution.

### ARGUMENT

An appeal of an interlocutory order is "a rare exception to the final judgment rule," *Koehler*

*v. Bank of Bermuda Ltd.*, 101 F.3d 863, 865 (2d Cir. 1996), and is "especially rare in the early

stages of litigation," *In re Facebook, Inc.*, 986 F. Supp. 2d 524, 533 (S.D.N.Y. 2014). The

petitioner must show that the "order involves a controlling question of law as to which there is

substantial ground for difference of opinion and * * * an immediate appeal from the order may

materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). Even then, a

district court retains "unfettered discretion to deny certification of an order for interlocutory

appeal." *Nat'l Asbestos Workers Med. Fund v. Philip Morris, Inc.*, 71 F. Supp. 2d 139, 162

(E.D.N.Y. 1999). Given the exceptionally high bar raised by Section 1292(b), and basic

considerations of fairness to litigants and courts, interlocutory appeal is an inappropriate vehicle

for raising new arguments or elevating others that a petitioner did not develop in his original

briefing before the trial court.

### I.  Defendant's Claim That He is Not Subject to This Court's Authority is Meritless

Defendant's lead argument for interlocutory appeal (one he virtually ignored in his motion

to dismiss) is that this Court lacks jurisdiction to issue a declaratory judgment addressing his

conduct. Defendant rests his argument on a concurring opinion by Justice Scalia in *Franklin v.*

*Massachusetts*, 505 U.S. 788, 827-28 (1992), and *dicta* in two D.C. Circuit cases that are not

controlling authority anywhere, much less in this Court. Justice Scalia spoke only for himself in

*Franklin* when he wrote that courts are powerless to impose declaratory judgments against the

President, and no court has converted his idiosyncratic view into law in the 30 years since *Franklin*

was decided. Defendant cites *Newdow v. Roberts*, 603 F.3d 1002, (D.C. Cir. 2010), for the

proposition that "injunctive or declaratory relief against all possible President-elects and the

President himself" is "unavailable." But that language is nonbinding *dictum* even in the D.C.

Circuit because neither the President nor "all possible Presidents-elect" were defendants in the

case. *Id.* at 1013. The *Newdow dictum*, like Justice Scalia's concurrence in *Franklin*, has never

been made law, including in any of the other cases Defendant cites.[1]

Instead, the Supreme Court has expressly *approved* "declaratory relief concerning the

President's official, discretionary actions." ECF 101 at 3. In *Clinton v. City of New York*, 524 U.S.

417 (1998), decided six years after *Franklin*, the Supreme Court addressed and upheld a

declaratory judgment issued against President Clinton for cancelling various Congressional actions

---

[1] Defendant cites a footnote from *Swan v. Clinton*, 100 F.3d 973, 976 n.1 (D.C. Cir. 1996) for the proposition that granting declaratory relief against the President involves "similar considerations" to those that apply to the question of a court's power to issue an injunction against the President. This footnote is not part of the holding of the case and is thus *dictum*.

via the use of a line-item veto. *See id.* at 421. In fact, the Supreme Court relied on the district court's issuance of a declaratory judgment to hold that the plaintiffs had Article III standing to sue, because a declaratory judgment against the President would redress their injuries. *Id.* at 433 n.22. And while Justice Scalia disagreed with the majority's constitutional analysis in *City of New York*, he *concurred* in the majority's jurisdictional holding as to one of the two plaintiffs, *see id.* at 463 (Scalia, J., concurring in part and dissenting in part), thus abandoning his position in *Franklin* that courts "cannot issue a declaratory judgment against the President," *Franklin*, 505 U.S. at 827 (Scalia, J., concurring in part and in the judgment).[2]

While no courts have followed Justice Scalia's *Franklin* concurrence or the *Newdow dictum*, multiple courts have held that they *do* have jurisdiction to grant declaratory relief against the President for official discretionary actions. *See Stone v. Trump*, 400 F. Supp. 3d 317, 359 (D. Md. 2019) (relying on *City of New York*); *District of Columbia v. Trump*, 291 F. Supp. 3d 725, 751-52 (D. Md. 2018) (same). Most on point, as the Court noted in its Order, ECF 76 at 22, another judge of this court recently granted declaratory relief concerning the President's official, discretionary actions in *Knight First Amendment Inst. at Columbia Univ. v. Trump*, 302 F. Supp. 3d 541, 579 (S.D.N.Y. 2018), and the Second Circuit affirmed entry of that declaratory judgment

---

[2] It does not matter that *City of New York* involved a challenge to the constitutionality of a federal statute. *See Newdow v. Roberts*, 603 F.3d 1002 at 283. Under the rule Defendant seeks to argue on appeal—that this Court lacks "jurisdiction to enter declaratory relief concerning the President's official, discretionary actions," ECF 101 at 3—*City of New York* would have come out the other way because the action challenged there (exercise of the line-item veto) was an "official, discretionary action." ECF 101 at 3. The Second Circuit is precluded from adopting Defendant's proposed rule in light of *City of New York*. The same is true of Defendant's newly minted argument that the Declaratory Judgment Act cannot extend to the President because it lacks an "express statement" that it does so. ECF 101 at 4. The Supreme Court has already applied the Declaratory Judgment Act to the President. *See City of New York*, 524 U.S. 417 at 433 n.22, 449; *id.* at 463 (Scalia, J., concurring in part). Finally, Defendant's alternative (and newly-raised) argument that "even if a declaratory judgment could conceivably lie against the President in some situations, this context, which involves the President's interactions with the press and with the public through the press, is not one of them," ECF 101 at 4, is also wrong. This case is narrowly focused on the President's direct threats and retaliation against the free press, actions that implicate core individual constitutional rights, and is thus a *more* appropriate context for judicial intervention than, say, a challenge to the President's foreign policy decisions. In addition, the fact that Defendant never raised this argument, or the "express statement" argument, in his motion to dismiss papers provides the Court another reason to reject both. *Id.* at 4.

against the Defendant. *See Knight First Amendment Inst. at Columbia Univ. v. Trump*, 928 F.3d 226, 233–34 & n.3 (2d Cir. 2019).

Given the lack of any controlling contrary authority, there is no "substantial ground for difference of opinion" regarding whether a federal court has "jurisdiction to enter declaratory relief concerning the President's official, discretionary actions." ECF 101 at 2-3. Holding otherwise would place the President above the law and would effectively mean that the President is not subject to the First Amendment.

**II.     Defendant's Claim that Plaintiff lacks Standing to Sue Ignores the Actual Allegations of the Amended Complaint, On Which the Court's Motion to Dismiss Decision Properly Rests**

Defendant's second ground for seeking interlocutory appeal misconstrues the key facts, and therefore inescapably fails to present a "controlling question of law as to which there is substantial ground for difference of opinion." ECF 101 at 8.[3] Defendant argues that Plaintiff lacks standing to sue because "Plaintiff identifies no individual who has been both threatened and chilled by [Defendant's] threats," and any alleged chilling "only amounts to a self-inflicted injury based on 'fears of hypothetical future harm that is certainly not impending.'" ECF 101 at 6 (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 416 (2013)). Both arguments are flatly contradicted by the allegations in the Amended Complaint—allegations the Court properly relied on in its Order.

---

[3] Defendant's complicated and factually inaccurate argument in support of this second ground for appeal underscores the wisdom of a long line of decisions in this court holding that "fact-bound" issues are not appropriate for Section 1292(b) certification. *See, e.g., Narragansett Elec. Co. v. American Home Assur. Co.*, 921 F. Supp. 2d 166, 196 (S.D.N.Y. 2013); *Stone v. Patchett*, No. 08 Civ. 5171, 2009 WL 1544650, at \*2 (S.D.N.Y. June 3, 2009). Where an interlocutory appeal "would necessarily present a mixed question of law and fact, not a controlling issue of pure law," Section 1292(b) certification "is not appropriate." *S.E.C. v. First Jersey Securities, Inc.*, 587 F. Supp. 535, 536 (S.D.N.Y. 1984); *see also, e.g., Century Pacific, Inc. v. Hilton Hotels Corp.*, 574 F. Supp. 2d 369, 371-72 (S.D.N.Y. 2008) (same).

As an initial matter, neither of Defendant's arguments has anything to do with Plaintiff's unconstitutional threat claims. An unconstitutional threat is a redressable wrong regardless of any chilling effect, so even if these arguments were accepted on an interlocutory appeal, Plaintiff's unconstitutional threat claims would still go forward. *See, e.g.*, *Backpage.com, LLC v. Dart*, 807 F.3d 229, 231 (7th Cir. 2015) (an unconstitutional threat "is actionable * * * even if it turns out to be empty—the victim ignores it, and the threatener folds his tent"); *see also Okwedy v. Molinari*, 333 F.3d 339, 344 (2d Cir. 2003). For this reason, Defendant's standing arguments fail to materially advance the termination of the litigation.

In any event, both arguments are wrong. First, Plaintiff's complaint *does* identify individuals who were "both threatened and chilled by [Defendant's] threats." ECF 101 at 6. As the Court explained, Plaintiff alleged that PEN member Jim Acosta's own speech has been chilled. ECF 76 at 11–12 & n.2. These allegations alone are sufficient to confer associational standing on Plaintiff for the Press Corps Claims.[4] But there is more. The Amended Complaint identified White House reporter April Ryan, who was similarly threatened by Defendant. *See* ECF 38 ¶ 41. Plaintiff also alleged that Defendant broadly threatened to revoke the credentials of *any* journalist "who failed to show him 'respect,'" and that this very real risk of retaliation by Defendant chilled the speech of *all* members of the White House press corps—a discrete class of individuals who were both threatened and whose speech was chilled. *Id.* ¶¶ 41, 48; *see also id.* ¶¶ 93–94, 96–98, 113–114, 128–130.[5]

---

[4] In arguing his second ground for appeal, Defendant ignores the security clearance claims. Plaintiff has also alleged individuals who have been both threatened and chilled by Defendant's misconduct for those claims: the six former national security officials whose security clearances Defendant expressly threatened to revoke based on their public commentary regarding the Russia investigation. ECF 76 at 16 & n. 3; *see* ECF 38 ¶ 49, ¶¶ 53-54.

[5] A government actor, like a mob boss, can use a threat (or retaliation) against one person to deliberately intimidate (or chill) others similarly situated. Calling out or "making an example of" one member of the White House press corps, or one former official holding a security clearance, can serve as a threat towards, and chill the speech of, all other reporters and former officials similarly situated, even if they themselves were not called out or threatened by

Nor does the actual chilling of the speech of Mr. Acosta, other journalists, and security clearance holders constitute "a self-inflicted injury based on 'fears of hypothetical future harm that is not certainly impending.'" ECF 101 at 6 (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 416 (2013)). Unlike in *Amnesty International*, the "future harm" here was not some hypothetical possibility lurking in a statute. Rather, in this case, Plaintiff has alleged multiple actionable threats issued by Defendant (or his agents) and expressly directed at discrete populations (White House press corps members, and former government officials with security clearances who publicly criticize Defendant). In addition, as the Court held, by actually making good on the threats in specific instances, "Defendant made his threats of future punishment more credible, and consequently, effective." ECF 76 at 12. Defendant ensured there was nothing "hypothetical" about these threats. On these allegations, and certainly at the pleading stage, Plaintiff is easily entitled to the inference that Defendant's threats were sufficiently real and imminent to confer standing.

Finally, in another argument not raised previously, Defendant contends that Plaintiff's "receipt-of-information injury based on chilled reporting is indistinguishable from that of the public at large." ECF 101 at 7. This, again, is wrong.[6] Plaintiff alleged (as the Court recognized) that the research and analysis it engages in requires "sources of information" such as the former government officials whose security clearances Defendant threatened to revoke, "who provide unique and expert insight on the Administration." ECF 76 at 17. "Loss of these official's speech," the Court properly held, "is therefore not a generalized grievance and affects Plaintiff's operations directly." *Id.* The Court also rightly held that because Plaintiff "monitors how government interacts

---

name. *Cf., e.g.*, *Ragbir v. Homan*, 923 F.3d 53, 71 (2d Cir. 2019) (holding that retaliatory conduct can "broadly chill protected speech" beyond just the specific victims of the retaliatory conduct). Here, Defendant both made examples of individual members of the White House press corps and specific security clearance holders, as well as threatened the entire White House press corps as a class.

[6] Even if the harm suffered by Plaintiff were shared by a wide swath of the public, that would not preclude standing. *See, e.g.*, *Public Citizen v. U.S. Dep't of Justice*, 491 U.S. 440, 449–50 (1989).

with the press," Plaintiff "has a particular interest in receiving and monitoring" White House press corps reporting, *id.*, so Plaintiff's receipt-of-information injury based on the chilling of White House press corps reporting is likewise distinguishable from any broader public interest.[7]

Defendant responds to all this by glibly asserting that the only information Plaintiff needs to do its work is "information about threats and retaliation, and plaintiff does not allege that it is being deprived of *that* type of information," ECF 101 at 7, but that is doubly false. First, Plaintiff needs far more than just "information about threats and retaliation" to fulfill its mission of studying "how government interacts with the press," as that mission goes well beyond addressing the kinds of brazen direct threats and retaliation at issue in this case. Second, even if the only information relevant to Plaintiff's work was "information about threats and retaliation," Defendant has no basis to assert that his misconduct could not possibly chill reporting on those topics. The contrary inference—that Defendant's threats against all critical reporting would naturally chill reporting seeking to expose the truth behind his retaliatory actions against the press—is far more plausible.

For all these reasons, Defendant's second ground for interlocutory appeal does not raise a "controlling question of law as to which there is substantial ground for difference of opinion," and does not support granting the petition.

---

[7] Defendant suggests that the Court's purported "error in concluding that plaintiff has standing perhaps reflects the ambiguity in the Second Circuit's case law about what a plaintiff must show to establish standing to bring a First Amendment retaliation claim." ECF 101 at 7. Setting aside that Plaintiff did in fact allege actual chilling, there is no ambiguity in the Second Circuit's caselaw. The Second Circuit has clarified that it uses different elements for retaliation claims "depending on the factual context." *Zherka v. Amicone*, 634 F.3d 642, 644 (2d Cir. 2011). Where, as here, the claim is that a defendant retaliated against an individual for their speech by revoking a valuable government benefit, such as a building permit or a place of public employment, a plaintiff need not allege "actual chilling." *See id.* (collecting cases); *see also Perry v. Sindermann*, 408 U.S. 593, 597 (1972); *cf. Sherrill v. Knight*, 569 F.2d 124, 130 (D.C. Cir. 1977) ("[T]he interest of a bona fide Washington correspondent in obtaining a White House press pass" "undoubtedly qualifies as [a] liberty [interest] which may not be denied without due process of law under the fifth amendment."). Instead, a plaintiff need only allege that the retaliatory conduct "would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights." *Dillon v. Morano*, 497 F.3d 247, 254 (2d Cir. 2007); *Saber v. New York State Dep't of Fin. Servs.*, No. 15 CIV. 5944 (LGS), 2018 WL 3491695, at *7 (S.D.N.Y. July 20, 2018), *aff'd*, 771 F. App. 48 (2d Cir. 2019).

### III.     Defendant is not Permitted to Threaten to or Deny Press Access or to Revoke Security Clearances Based on the Content of Protected Speech

As his third ground for appeal, Defendant claims (yet again for the first time) that he has a right to threaten and retaliate against reporters based on their viewpoints. This argument is meritless, and certainly not a "substantial ground for difference of opinion" in this jurisdiction. The Second Circuit Court of Appeals and the district courts herein have repeatedly held that "once there is a public function, public comment, and participation by some of the media, the First Amendment requires [the government to provide] equal access to all of the media." *Am. Broad. Companies, Inc. v. Cuomo*, 570 F.2d 1080, 1083 (2d Cir. 1977); *Stevens v. New York Racing Ass'n, Inc.*, 665 F. Supp. 164, 175 (E.D.N.Y. 1987) ("When some members of the press are given access to cover an event, the state cannot arbitrarily impose limits on other press representatives' access to the news."); *see also Nicholas v. Bratton*, 376 F. Supp. 3d 232, 259-260 (S.D.N.Y. 2019); *WPIX, Inc., v. League of Women Voters*, 595 F. Supp. 1484, 1489 (S.D.N.Y. 1984); *accord Huminski v. Corsones*, 396 F.3d 53, 84 (2d Cir. 2005). This line of cases forecloses Defendant's argument—which he tellingly rests on a decision from the Fourth Circuit Court of Appeals and none from this jurisdiction—that threatening to revoke, or revoking, a White House press pass on account of a reporter's viewpoint is just fine under the First Amendment.[8]

Defendant's fourth ground for appeal—that Plaintiff failed to state a claim with respect to the President's threats to revoke security clearances and his actual revocation of former CIA Director John Brennan's clearance—fares no better. Defendant claims that Plaintiff "has not alleged that the speech of any specific third party has actually been chilled," ECF 101 at 9-10, but

---

[8] *Baltimore Sun Co. v. Ehrlich*, 437 F.3d 410 (4th Cir. 2006), would not help Defendant even if it were binding Second Circuit precedent. It is easily distinguishable on its facts from this case because it involved "a public official's selective preferential communication to his favorite reporter or reporters," *id.* at 418, and not access to events or benefits (such as a White House press pass) that are more widely available to members of the media.

as explained above, Defendant is factually wrong. Plaintiff alleged threats against six former national security officials and retaliation actually carried out against Brennan. Moreover, for the reasons stated in Part II, *supra*, Plaintiff is not required to show that the President's blatant threats to revoke security clearances based on the protected speech of the clearance holders actually chilled anyone's speech, or that his retaliation against Brennan resulted in harm other than the revocation of Brennan's clearance, for Plaintiff's right to receive speech to be implicated.

## CONCLUSION

Defendant's section 1292(b) petition is a transparent attempt to further delay this case in the service of this President's view—advanced not only here but in myriad other contexts—that he is above the law. Likewise, his constant refrain that discovery should be completely prohibited merely because he might raise a privilege claim serves the same ends. The President is not above the law, he cannot violate the First Amendment with impunity, and any privilege issues that may arise in discovery can be decided at the appropriate time.

This Court carefully considered its decision on the Defendant's motion to dismiss and preserved a narrow case that implicates freedom of the press and the right to dissent, both of which are critical to the preservation of our democracy. Defendant's interlocutory appeal petition is meritless. The Court should swiftly deny it and allow this important case to proceed.

Dated: June 25, 2020

Respectfully submitted,

THE PROTECT DEMOCRACY PROJECT, INC.,
MEDIA FREEDOM & INFORMATION
CLINIC, AND DAVIS WRIGHT TREMAINE LLP

Ian Bassin (IB-2417)
THE PROTECT DEMOCRACY PROJECT, INC.
222 Broadway, 19th Floor
By: /s/ Kristy Parker                                    New York, NY 10038
Kristy Parker (*pro hac vice*)                           Telephone: (202) 599-0466
THE PROTECT DEMOCRACY PROJECT, INC.                      ian.bassin@protectdemocracy.org
2020 Pennsylvania Avenue., NW, #163
Washington, DC 20006
Telephone: (202) 849-9307                                John Langford (JL-2367)
Facsimile: (929) 777-8428                                THE PROTECT DEMOCRACY PROJECT, INC.
kristy.parker@protectdemocracy.org                       555 W. 5th St.
                                                         Los Angeles, CA 90013
Robert Corn-Revere (RC-0359)                             Telephone: (202) 579-4582
Ronald G. London (RL-8734)                               john.langford@protectdemocracy.org
Chelsea T. Kelly
DAVIS WRIGHT TREMAINE LLP                                Laurence M. Schwartztol (LS-1978)
1919 Pennsylvania Ave., N.W., Suite 800                  Justin Florence (*pro hac vice*)
Washington, D.C.  20006                                  THE PROTECT DEMOCRACY PROJECT, INC.
Telephone: 202) 973-4200                                 10 Ware Street
BobCornRevere@dwt.com                                    Cambridge, MA 02138
RonnieLondon@dwt.com                                     Telephone: (202) 599-0466
ChelseaKelly@dwt.com                                     larry.schwartztol@protectdemocracy.org
                                                         justin.florence@protectdemocracy.org
David A. Schulz (DS-3180)
MEDIA FREEDOM AND INFORMATION                            Steven A. Hirsch (SH-8188), consultant with
ACCESS CLINIC                                            THE PROTECT DEMOCRACY PROJECT, INC.
FLOYD ABRAMS INSTITUTE                                   (SH-8188)
FOR FREEDOM OF EXPRESSION                                633 Battery Street
Yale Law School[9]                                       San Francisco, CA 94111-1809
1675 Broadway, 19th Floor                                Telephone: (415) 676-2286
New York, NY 10019-5820                                  sahirsch2@gmail.
Tel: (212) 850-6103
Fax: (212) 223-1942
david.schulz@yale.edu                                    *Counsel for Plaintiff*

Alexa, Whitman, *law student intern*
Sara Worth, *law student intern*
Stacey Menjivar, *law student intern*

---

[9] This Memorandum of Law in Opposition to Defendant's Motion to Certify the Court's March 24 Opinion & Order for Interlocutory Appeal and to Stay Discovery has been prepared in part by a clinic associated with the Abrams Institute for Freedom of Expression and the Information Society Project at Yale Law School, but does not purport to present the school's institutional views, if any.