UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PEN AMERICAN CENTER, INC.,<br><br>        Plaintiff,<br><br> - against -<br><br>DONALD J. TRUMP, in his official capacity as President of the United States,<br><br>        Defendant. | No. 18 Civ. 9433 (LGS) |

**DEFENDANT'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF HIS MOTION TO CERTIFY THE COURT'S MARCH 24 OPINION & ORDER FOR INTERLOCUTORY APPEAL AND TO STAY DISCOVERY**

AUDREY STRAUSS
Acting United States Attorney for the
Southern District of New York
Attorney for the United States
86 Chambers Street, Third Floor
New York, New York 10007
Tel: (212) 637-2715
*Attorney for Defendant*

Steven J. Kochevar
*Assistant United States Attorney*
 – Of Counsel –

**TABLE OF CONTENTS**

ARGUMENT ...........................................................................................................................................1

    I.    THE COURT SHOULD CERTIFY WHETHER DECLARATORY RELIEF IS AVAILABLE ........................................................................................1

    II.    THE COURT SHOULD CERTIFY WHETHER PLAINTIFF HAS STANDING ..................................................................................................................3

    III.    THE COURT SHOULD CERTIFY WHETHER PLAINTIFF HAS STATED A PLAUSIBLE CLAIM FOR RELIEF .................................................5

CONCLUSION .......................................................................................................................................5

i

# **TABLE OF AUTHORITIES**

Cases                                                                                                                Page(s)

*Ariz. Christian Sch. Tuition Org. v. Winn*,
   563 U.S. 125 (2011) ................................................................................................... 1
*Baltimore Sun Co. v. Ehrlich*,
   437 F.3d 410 (4th Cir. 2006) ..................................................................................... 5
*Bauxites De Guinee*,
   456 U.S. 694 (1982) ................................................................................................... 1
*Cheney v. U.S. Dist. Court*,
   542 U.S. 367 (2004) ............................................................................................... 1, 3
*Clapper v. Amnesty Int'l USA*,
   568 U.S. 398 (2013) ................................................................................................... 4
*Clinton v. City of New York*,
   524 U.S. (1998) ..................................................................................................... 1, 2
*District of Columbia v. Trump*,
   291 F. Supp. 3d 725 (D. Md. 2018) ......................................................................... 3
*Dorsett v. County of Nassau*,
   732 F.3d 157 (2d Cir. 2013) ...................................................................................... 4
*Franklin v. Massachusetts*,
   505 U.S. 788 (1992) ................................................................................................... 2
*Ins. Corp. of Ireland v. Compagnie des Bauxites De Guinee*,
   456 U.S. 694 (1982) ................................................................................................... 1
*In re Facebook IPO Secs. and Deriv. Litig.*,
   986 F. Supp. 2d 524 (S.D.N.Y. 2014) ...................................................................... 3
*Kamen v. Kemper Financial Servs., Inc.*,
   500 U.S. 90 (1991) ..................................................................................................... 1
*Knight First Amendment Inst. at Columbia Univ. v. Trump*,
   928 F.3d 226 (2d Cir. 2019) ...................................................................................... 3
*Stone v. Trump*,
   400 F. Supp. 3d 317 (D. Md. 2019) ......................................................................... 3
*United States v. Nixon*,
   418 U.S. 683 (1974) ................................................................................................... 3
*Zherka v. Amicone*,
   634 F.3d 642 (2d Cir. 2011) ...................................................................................... 5

## ARGUMENT

The Court should grant the President's motion to certify and stay. Plaintiff ignores the "[s]pecial considerations applicable to the President . . . suggest[ing] that the courts should be sensitive to requests by the Government for interlocutory appeals." *Cheney v. U.S. Dist. Court*, 542 U.S. 367, 391-92 (2004). Plaintiff does not meaningfully dispute that the questions the President seeks to certify are controlling or that their certification would materially advance the termination of this litigation. Further, plaintiff's opposition demonstrates that there is a substantial ground for difference of opinion as to certifiable questions because plaintiff fails to identify controlling authority addressing the issues and fails to adequately engage with the authorities offered by the President.[1]

### I. The Court Should Certify Whether Declaratory Relief Is Available

Plaintiff's reliance on *Clinton v. City of New York*, 524 U.S. 418 (1998), is misplaced because that case does not discuss whether applying to the President himself a statute generally authorizing declaratory relief is consistent with the separation of powers, and it was brought against multiple defendants. First, plaintiff does not dispute that "[w]hen a potential jurisdictional defect is neither noted nor discussed in a federal decision, the decision does not stand for the proposition that no defect existed." *Ariz. Christian Sch. Tuition Org. v. Winn*, 563 U.S. 125, 144-45 (2011). *City of New York* does not address the propriety of declaratory relief against the President, an issue the Government did not raise before the Supreme Court, and therefore *City of New York* cannot control

---

[1] Plaintiff did not oppose the President's request to stay discovery. In addition, plaintiff's suggestions throughout its opposition that the President has waived issues is incorrect. The President's first two questions to be certified concern subject matter jurisdiction and therefore cannot be waived. *See Ins. Corp. of Ireland v. Compagnie des Bauxites De Guinee*, 456 U.S. 694, 702 (1982). More broadly, the President raised the availability of declaratory relief, standing, and the adequacy of plaintiff's allegations in his opposition to plaintiff's motion to dismiss. *See Kamen v. Kemper Financial Servs., Inc.*, 500 U.S. 90, 99 (1991) ("When an issue or claim is properly before the court, the court is not limited to the particular legal theories advanced by the parties, but rather retains the independent power to identify and apply the proper construction of governing law.").

on this question. Second, there were multiple defendants in *City of New York*, and so it did not even implicate whether declaratory relief may be entered against the President alone.

Contrary to plaintiff's assertion, *City of New York* is particularly inapposite with respect to the President's argument that the Declaratory Judgment Act ("DJA") cannot be extended to the President in the absence of a clear statement by Congress. In *Franklin v. Massachusetts*, 505 U.S. 788 (1992), the Supreme Court expressly considered whether or not the President is subject to a remedial statute when Congress does not speak clearly on that point. Even though the President was neither explicitly excluded from nor explicitly included in the Administrative Procedure Act's definition of an "agency"—"each authority of the Government," subject to certain exceptions— the Supreme Court held that "[o]ut of respect for the separation of powers and the unique constitutional position of the President, we find that textual silence is not enough to subject the President to the provisions of the APA." *Id.* at 800-01. Even more so than the APA, the DJA's general text and context offers no indication whatsoever that it extends specifically to the President. By contrast, in *City of New York*, the Line Item Veto Act "expressly authorize[d] '[certain individuals] adversely affected' by the Act to bring an action for declaratory judgment or injunctive relief on the ground that any provision of the Act is unconstitutional." 524 U.S. at 428. Although that language is not sufficiently clear about its application to the President to satisfy *Franklin*—an issue that the Court, to repeat, did not address—that statute at least specifically concerned action taken in the first instance by the President himself (albeit then executed by the subordinate officials also sued in *City of New York*), whereas the DJA is not even limited to government actors.

To be clear, application of *Franklin*'s clear-statement rule does not place the President "above the law," as plaintiff asserts, but instead simply bars the Judiciary from subjecting the Chief Executive to suit in his official capacity without the imprimatur of the Legislative Branch. And

more generally, the Supreme Court has explained that the President's special status in litigation "do[es] not mean that the President is above the law," but instead vindicates important separation of powers principles. *Cheney*, 542 U.S. at 382; *United States v. Nixon*, 418 U.S. 683, 715 (1974).

Plaintiff dismisses the cases cited by the President on declaratory relief as not amounting to controlling authority, but this materially misstates the relevant standard for whether there is a "substantial ground for difference of opinion," which exists when "there is conflicting authority on the issue." *In re Facebook IPO Secs. and Deriv. Litig.*, 986 F. Supp. 2d 524, 539 (S.D.N.Y. 2014). Justice Scalia's *Franklin* concurrence and the D.C. Circuit cases cited in the President's opening brief satisfy this standard because they are persuasive authorities providing a reasoned explanation of why declaratory relief is unavailable against the President, and the *Franklin* majority at a minimum raises substantial ground for doubting that such relief is appropriate absent a clear statement from Congress. Plaintiff does not engage with this reasoning and instead relies on *City of New York* and *Knight First Amendment Inst. at Columbia Univ. v. Trump*, 928 F.3d 226 (2d Cir. 2019), neither of which addressed the issue. Indeed, none of the cases cited by plaintiff implicated whether declaratory relief can be entered against the President in his official capacity as the only defendant, such that an otherwise-nonjusticiable suit may be adjudicated and the President in his official capacity bears the sole burdens of litigation.[2] The reasoned opinions in *Franklin* and the D.C. Circuit on one side of this question demonstrate that substantial ground for difference of opinion exists.

## II. The Court Should Certify Whether Plaintiff Has Standing

Plaintiff's response to the President's standing arguments again mixes and matches individuals who have allegedly been chilled and those who have allegedly been threatened. With respect

---

[2] *Stone v. Trump*, 400 F. Supp. 3d 317 (D. Md. 2019), involved multiple defendants. *District of Columbia v. Trump*, 291 F. Supp. 3d 725 (D. Md. 2018), is a suit against President Trump in his official and personal capacities, and the district court (erroneously) concluded that the "challenged actions . . . fall well outside his official duties." *Id.* at 746 (quotation marks omitted).

to the press corps claims, plaintiff relies on a single, generalized allegation that all members of the White House press corps have been chilled by facially benign rules of conduct put in place after Mr. Acosta's press pass was restored. *See* Am. Compl. ¶ 48; *see also id.* ¶ 45 (quoting rules). This allegation is insufficient to support standing because plaintiffs "cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 416 (2013). Plaintiff's response against *Clapper*'s application here conflates a threat, standing alone, with an injury sufficient to support Article III standing. *See* Opp. at 7. An alleged threat on its own does not suffice to establish standing, particularly in a case where plaintiff has not alleged that *it* has been threatened and instead relies on the allegedly reduced speech of third parties to show injury.[3] Other than its general allegation that the entire White House press corps has been chilled by rules of conduct, plaintiff relies on generalized allegations that the speech of survey respondents or of the press overall has been chilled, which are likewise insufficient under *Clapper* because plaintiff has not plausibly alleged that any of these groups, such as its survey respondents, have been threatened.

With respect to the security clearance claims, plaintiff has not alleged that any former government officials have actually been chilled. Plaintiff's opposition cites Paragraphs 49, 53, and 54 of its Amended Complaint on this point, *see* Opp. at 6 n.4, but there is simply no allegation there that the former officials have been chilled. *See* Am. Compl. ¶¶ 49, 53-54. Accordingly, plaintiff has not alleged that plaintiff itself has suffered lost receipt of speech or any "concrete harm" arising from alleged threats or action against those former officials. *See Dorsett v. County of Nassau*, 732

---

[3] Plaintiff makes this same error when it argues that the President's standing arguments do not "ha[ve] anything to do with" plaintiff's threats claims. Opp. at 6. Plaintiff must show standing to proceed on its threats claims by pleading—and eventually proving—that it has been injured. Thus, the standing question would resolve the entire case if the Circuit disagrees with this Court.

F.3d 157, 160 (2d Cir. 2013).[4]

Contrary to plaintiff's assertion, *see* Opp. at 8 n.7, the Second Circuit itself has acknowledged that there is ambiguity in its case law concerning the injury necessary to support standing to bring a First Amendment retaliation claim. *See* Opening Mem. at 7-8. On this point, plaintiff errs by arguing that the relevant injury to be evaluated under the Second Circuit's "concrete harm" standard is the "revo[cation of] a valuable government benefit." Opp. at 8 n.7. Plaintiff's putative injury is allegedly diminished speech from groups of journalists or former government officials, which is not at all like the examples of concrete government actions set out in *Dorsett* and *Zherka v. Amicone*, 634 F.3d 642, 645 (2d Cir. 2011). Whether diminished receipt of speech is a "concrete harm" is a novel question worthy of immediate appellate review.

### III. The Court Should Certify Whether Plaintiff Has Stated a Plausible Claim for Relief

Plaintiff's response to the President's third question to be certified relies on cases that primarily concern restrictions on newsgathering (or protest), rather than events set up to facilitate a give-and-take between executive officials and the press. *Baltimore Sun Co. v. Ehrlich*, 437 F.3d 410, 413 (4th Cir. 2006), and its reasoning involve the degree of executive control over a chief executive's own interactions with the press, and is therefore persuasive authority that the President, in his unique constitutional role, may manage how he interacts with the press. With respect to the President's fourth question, plaintiff has not alleged that any former government officials' speech was chilled, and plaintiff therefore has failed to implicate its own First Amendment rights.

### CONCLUSION

The Court should certify the Order under 28 U.S.C. § 1292(b) and stay discovery.

---

[4] Plaintiff has also failed to adequately connect any allegedly chilled speech with its alleged mission of "long-term advocacy on behalf of individual writers who are being punished because of their work," Am. Compl. ¶ 103, and so has failed to distinguish itself from the public at large.

Dated: New York, New York
July 2, 2020

                                        Respectfully submitted,

                                        AUDREY STRAUSS
Acting United States Attorney for the
Southern District of New York,
*Attorney for Defendant*

By:    */s/ Steven J. Kochevar*
        Steven J. Kochevar
        Assistant United States Attorney
        86 Chambers Street, Third Floor
        New York, New York 10007
        Tel.   (212) 637-2715
        Fax   (212) 637-2717
        steven.kochevar@usdoj.gov